*In re* Tr. O., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Ti. O., Respondent-Appellant (E.B. *et al.*, Intervenors-Appellees)).

Second District    No. 2—05—0669

Opinion filed December 20, 2005.

William L. Browers, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Nancy Faulls, James E. Fitzgerald, Annette N. Collins, and Nancy Kisicki, Assistant State's Attorneys, of counsel), for the People.

Michael W. Rathsack, of Law Offices of Michael W. Rathsack, and Marina

E. Ammendola, of Law Offices of Marina E. Ammendola, both of Chicago, for appellees.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain, of counsel), guardian *ad litem*.

JUSTICE GROMETER delivered the opinion of the court:

On April 16, 2002, the circuit court entered an order closing this case. This appeal arises out of the filing of a petition by respondent, Ti. O., to reinstate wardship and vacate a private guardianship that was instituted prior to the closure of the case in 2002. The circuit court determined that it lacked subject-matter jurisdiction to hear the petition, as the petition was filed more than 30 days after the closure of the case. Respondent contends, on several bases, that this ruling was error. Also involved in this appeal are Tr. O.'s guardians, E.B. and A.B., who intervened in the case, as well as the Office of the Cook County Public Guardian, which has filed a brief on Tr. O.'s behalf. For the reasons that follow, we reverse and remand.

## BACKGROUND

The present case was initiated on February 22, 1996, when the State filed a petition for adjudication of wardship alleging that Tr. O. was neglected or abused because he was born with a controlled substance in his blood. In November 1997, the State filed a petition alleging that Ti. O. was an unfit parent. Approximately one year later, the trial court entered an order finding that Ti. O. was not unfit. In March 1998, the court set a permanency goal of return home within 12 months. In July of the following year, E.B. and A.B., who had been Tr. O.'s foster parents since he was eight days old, intervened in the case. In October 1999, the trial court changed the permanency goal from return home to private guardianship. In January 2000, the court appointed the foster parents as co-guardians of Tr. O. under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—1 *et seq.* (West 2000)). The matter of visitation was litigated in the following months.

On April 12, 2002, the trial court conducted a hearing on the issues of unsupervised visitation for Ti. O., a rule to show cause against the guardians brought by Ti. O., and case closure. Relevant here, the court found that Tr. O. and the guardians were no longer in need of supervision and that it was in Tr. O.'s best interest that the case be closed. As part of its order, the court ruled that guardianship would remain with E.B. and A.B. It also ordered that visitation between Ti. O. and Tr. O. was to be supervised; however, the guardians could, at their discretion, permit unsupervised visitation if they determined that supervision was not necessary for the safety of Tr. O. Finally, the

order contained the following statement: "[T]he Court retains jurisdiction of this case and the parties hereto for the purpose of modification and enforcement of this order."

During the hearing, the court made a number of statements regarding the retention of jurisdiction. Prior to ruling, the following colloquy took place:

"THE COURT: State, you knowledge [sic] that the court has—does have continuing jurisdiction *** to address the issues of visitation as part of the closure order?

MR. LOTSOFF: Yes, your Honor."

In pronouncing its ruling, the court stated, "And from time to time if issues relating to visitation do occur that this Court can in fact maintain enforcement." It also stated, "The private guardian may not change the conditions of custody of this child to reside with any other person without ordered leave of this Court and this Court does retain jurisdiction of this case and of the parties for the purposes of enforcing these orders."

On August 27, 2004, Ti. O. filed a petition titled "Supplemental Petition to Reinstate Wardship and Motion to Vacate Private Guardianship." She twice amended this petition. In her petition, Ti. O. alleged that it was now in Tr. O.'s best interest to be returned to her custody. She averred that she had corrected the conditions that caused his removal; she had moved into an appropriate three-bedroom home; she is employed and financially able to care for him; she had successfully parented Tr. O.'s brother Brandon, who was doing well in school; she attends a Pentecostal church that provides her with a source of support, encouragement, and inspiration; she regularly visits Tr. O. and they have a wonderful mother-son relationship; Brandon and Tr. O. have a good sibling relationship; reunification would foster Tr. O.'s awareness of his cultural heritage; and Tr. O. indicated to her that he wishes to have more contact with her.

The trial court dismissed Ti. O.'s petition and later denied her motion to reconsider. It rejected her arguments that section 2—33 of the Act (705 ILCS 405/2—33 (West 2002)) allowed for the reinstatement of the case; that the closure of the case worked a *de facto* termination of her parental rights; and that the conduct of the parties revested the trial court with jurisdiction. It also determined that Ti. O.'s argument that the trial court had, in fact, retained jurisdiction over the case was ill-taken in that it took out of context certain statements that the trial court made in rendering its closure order. This timely appeal followed.

## I. APPELLATE JURISDICTION

Before turning to the merits of this appeal, we must assess our own jurisdiction. The Public Guardian contends that this court lacks

jurisdiction. We disagree. The Public Guardian notes that an order establishing a private guardianship and closing a case is appealable under Supreme Court Rule 301 (155 Ill. 2d R. 301), upon which Ti. O. relies. See *In re V.M.*, 352 Ill. App. 3d 391, 396 (2004). However, it argues that the order entered in this case did not establish a private guardianship; rather, it denied a motion to vacate one. For the purpose of our jurisdiction, we find this distinction immaterial.

In determining whether appellate jurisdiction exists, the substance of the order at issue controls over its form. *In re J.N.*, 91 Ill. 2d 122, 128 (1982). Recently, in *In re Faith B.*, 216 Ill. 2d 1 (2005), our supreme court explained why an order establishing a private guardianship was a final and appealable order, even though permanency orders typically are not (*In re D.D.H.*, 319 Ill. App. 3d 989, 991 (2001)). The court reasoned:

> "The permanency order entered in this case was atypical in several ways, each of which indicates that it was intended to be a final and permanent order. First, it was entered as part of a dispositional order, which the circuit court specifically stated was 'final and appealable.' Second, the circuit court declined to set any subsequent permanency hearings. Third, the trial judge's comments at the dispositional hearing while setting the permanency goal clearly indicated that the court believed the *only* acceptable plan in this case was guardianship by the aunts. Finally, perhaps the most important indications of the circuit court's intent are that the goal was guardianship by a relative, and that the goal *was the status quo at the time the court set the goal.* That is, the goal the court set—guardianship by the aunts—was achieved as soon as the court set it, because in the order setting that goal the court also placed guardianship and custody with the aunts. Thus, unlike a typical permanency goal, there was *no* time during which the goal remained open and subject to modification. All of the facts noted above point to the conclusion that the circuit court intended that the goal would not subsequently be modified.
>
> Thus, because the permanency order was intended as final and immutable at the time it was entered, we conclude that the appellate court did in fact have jurisdiction to review the order pursuant to Rule 301." (Emphasis in original.) *In re Faith B.*, 216 Ill. 2d at 17-18.

We find the order at issue in the present case sufficiently similar to the order under consideration in *Faith B.* such that we have jurisdiction over this appeal

In *Faith B.*, the supreme court considered it significant that the trial court specifically stated that its order was "final and appealable." *In re Faith B.*, 216 Ill. 2d at 17. Here, the trial court stated that

it was dismissing Ti. O.'s petition "with prejudice." Second, the supreme court also considered the fact that the trial court declined to set any further permanency hearings. *In re Faith B.*, 216 Ill. 2d at 17. In this case, the trial court specifically stated, in rendering its order, that, "[a]s no issues remain outstanding in this cause, no further court dates are necessary." Third, the supreme court noted that the trial court had determined that the only acceptable arrangement was guardianship. *In re Faith B.*, 216 Ill. 2d at 17. Similarly, in this case, the trial court stated, "After years of litigation and unsuccessful extended efforts at reunification, the overwhelming evidence demonstrated that further efforts at reunification were not in the minor's best interests, and the April 16, 2002, order was intended to, and in fact did, establish permanency for the minor child Tr. O." Last, the supreme court stated that perhaps the most important factor was that guardianship represented the status quo at the time the order in *Faith B.* was entered. *In re Faith B.*, 216 Ill. 2d at 17. In this case, too, the guardianship was in place at the time the trial court dismissed Ti. O.'s petition.

By determining that it lacked jurisdiction, the trial court essentially determined that the existence of the guardianship was not modifiable. That this was a denial of a motion to vacate the guardianship is beside the point. If we were to accept the Public Guardian's rationale, we would essentially be saying that the possibility of filing more ill-fated motions to vacate with a court that has determined that it lacks jurisdiction over such motions precludes review. We, on the other hand, find well-taken Ti. O.'s analogizing the trial court's order to a grant of a motion to dismiss in a civil case. The mere fact that, in the trial court's view, it reserved jurisdiction over the issue of visitation is not sufficient to preclude our review. See *In re T.M.*, 302 Ill. App. 3d 33, 37 (1998) ("Further, an order is final where matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order"). We see no way in which this order could be more final; therefore, we have jurisdiction to pass upon this appeal.

## II. JURISDICTION OF THE TRIAL COURT

The trial court determined that it did not have jurisdiction to entertain Ti. O.'s motion to reinstate the wardship over Tr. O. and to vacate the guardianship of E.B. and A.B. because more than 30 days had passed since it entered its order establishing that guardianship. On appeal, Ti. O. advances a number of arguments as to why this determination was error. Having determined in the preceding section that appellate jurisdiction exists, we may now turn to the substance of those arguments.

■ First, we reject Ti. O.'s contention that the trial court could regain jurisdiction by virtue of section 2—33 of the Act (705 ILCS 405/2—33 (West 2004)). That section, titled "Supplemental petition to reinstate wardship," provides, in relevant part, as follows:

"(1) Any time prior to a minor's 18th birthday, pursuant to a supplemental petition filed under this Section, the court may reinstate wardship and open a previously closed case when:

(a) wardship and guardianship under the Juvenile Court Act of 1987 was vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975;

(b) the minor is not presently a ward of the court under Article II of this Act nor is there a petition for adjudication of wardship pending on behalf of the minor; and

(c) it is in the minor's best interest that wardship be reinstated." 705 ILCS 405/2—33 (West 2004).

The first condition is lacking in this case; there was no appointment of a guardian under the Probate Act of 1975 (Probate Act) (755 ILCS 5/1—1 *et seq.* (West 2002)).

■ Ti. O. argues, nevertheless, that she should be able to avail herself of this provision. Ti. O. asserts that she cannot "fathom why a case closed in conjunction with the appointment of a private guardian under the Probate Act should be subject to reinstatement whereas a case closed with the continuation of an earlier guardianship entered under the Juvenile Court Act *** should not." She goes on to speculate as to possible reasons for the enactment of section 2—33. She suggests that perhaps section 2—33 is limited to guardianships under the Probate Act because the legislature felt that guardianships under the Juvenile Court Act were already subject to continuing jurisdiction under the Juvenile Court Act.

We need not, indeed cannot, engage in such speculation. It is well established that where the language of a statute is clear, a court may not read into it any additional conditions, exceptions, or limitations in the guise of interpretation. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 105 (2004). Instead, where the language of a statute is clear, we must apply it without further aids of construction. *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004). Ti. O.'s invitation for us to examine the logic behind the statutory scheme is a request that we disregard the plain language of the statute. However, the legislature plainly limited section 2—33 to guardianships under the Probate Act. We must accept this limitation and therefore reject Ti. O.'s argument on this point.

We also reject Ti. O.'s reliance on *In re T.W.*, 352 Ill. App. 3d 1208 (2004), in support of this point. In that case, the court found that sec-

tion 2—33 gave the trial court jurisdiction over a previously closed case despite the fact that nowhere in the opinion does the court mention the Probate Act. Indeed, when the court set forth the text of section 2—33, it omitted subsection (1)(a), which requires that the "wardship and guardianship under the Juvenile Court Act of 1987 was vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975" (705 ILCS 405/2—33(1)(a) (West 2004)). *In re T.W.*, 352 Ill. App. 3d at 1212. We find it implausible that the *T.W.* court concluded, *sub silentio*, that section 2—33 applied in a manner contrary to its plain language. The more plausible explanation is that subsection (1)(a) of section 2—33 was not at issue in that case, and therefore, it was not discussed.

■ Ti. O. also contends that the trial court reserved jurisdiction. Typically, a trial court may retain jurisdiction over certain issues in order to enforce or modify an order as appropriate. *Kelly v. Warner*, 119 Ill. App. 3d 217, 219 (1983) ("The concept of continuing jurisdiction in child-custody matters permits a court to retain jurisdiction, acquired in the original proceeding, to make future modifications of the decree"). Indeed, in this case, the trial court wrote in its order closing the case that "the private guardian may *not* change the conditions of the custody or otherwise alter this order; and the Court retains jurisdiction of this case and the parties hereto for the purpose of modification and enforcement of this order." (Emphasis in original.) Furthermore, in pronouncing its ruling from the bench, the court stated, "The private guardian *may not change the conditions of custody* of this child to reside with any other person without ordered leave of this Court *and this Court does retain jurisdiction of this case and of the parties for the purposes of modification and enforcement of these orders.*" (Emphasis added.) In reviewing these orders when passing on Ti. O.'s motion to vacate the guardianship, the trial court determined that it had intended to retain jurisdiction only over visitation and that, read in context, these comments demonstrate that intent.

We disagree. Quite simply, in both its oral and written orders, the trial court expressly stated that the guardian cannot change the conditions of custody and that it was retaining jurisdiction for the modification or enforcement of its orders. In fact, the issue of custody appears in the very same sentences with the retention of jurisdiction. Neither statement is limited to visitation. We do acknowledge that at the time the trial court pronounced its ruling, the issue of visitation was being discussed. However, we do not believe that such discussions may be used to cloud or color what are otherwise quite unambiguous retentions of rather broad jurisdiction. Moreover, we note that in its oral ruling, the court stated it was retaining jurisdiction to modify or

enforce "these"—plural—orders. If there is a conflict between a trial court's written and oral orders, the oral order controls. *In re Taylor B.*, 359 Ill. App. 3d 647, 651 (2005) ("When a conflict exists between the court's oral pronouncement and its written order, the oral pronouncement prevails"); *People v. Smith*, 242 Ill. App. 3d 399, 403 (1993).

We do not mean to suggest that judicial orders should be read with the precision of statutes, and we are cognizant that the trial court likely knew what it meant to do when it issued its order that closed the case in 2002. However, the language of an order must mean something. *Cf. People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982) ("As noted by the State, there are numerous cases which hold that a trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court"). Accordingly, we cannot condone the adoption of a position that is not only unsupported by, but is contrary to, the expressed order of the trial court as it was issued in 2002.

Sometimes, ambiguity in a court's order will be of little consequence; other times, it will have severe consequences for parties engaging in future conduct based upon the order. It certainly is not unheard of to remand an order for clarification. For example, in *In re Marriage of Stribling*, 219 Ill. App. 3d 105, 110 (1991), the reviewing court remanded the cause to the trial court so that it could clarify its order regarding counseling and visitation between a parent and child. Clarifying an order under such circumstances is appropriate, as the clarification serves only to guide the future conduct of the parties. See also *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 311-12 (2002). Conversely, when the consequences of past conduct are at issue, clarifying an ambiguous order that has served to guide that conduct is improper. See *People v. Heitland*, 253 Ill. App. 3d 836, 843 (1993) (reversing contempt conviction where trial court's order was ambiguous). The trial court's order closing the case in 2002, as it pertains to the course of this litigation, has more to do with fixing rights than with guiding future conduct. Thus, a clarification that works a detriment to a party retroactively is inappropriate. *Cf. In re H.S.H.*, 322 Ill. App. 3d 892, 897 (2001) ("When a trial court determines that it is necessary to prohibit conduct that is not otherwise proscribed by statute or rule, it is imperative that the court's order be clear and that all concerned parties have an accurate understanding of its limitations. [Citation.] If the trial court's order is unclear, any sanction entered for a perceived violation is an abuse of discretion and subject to reversal").

We are aware that the trial court did not state that it was clarify-

ing its earlier order when it ruled upon Ti. O.'s motion to reinstate the wardship and vacate the guardianship, instead finding that its ruling reflected that it retained jurisdiction over visitation only. However, the trial court did rely on the conversations surrounding the issuance of its order to defeat what otherwise looks like a relatively plain statement that it was retaining jurisdiction over the issue of custody. Thus, characterizing the ruling as a clarification is accurate, since the earlier order could easily be read as reserving jurisdiction over more than visitation. The State faults Ti. O. for not appealing the order closing the case; however, had the order been clear that the sole issue open to dispute was visitation, she very well may have done just that.

The State suggests that our review of the trial court's finding that it retained jurisdiction only over visitation should be deferential. The State argues, "The juvenile court judge, who entered both the guardianship order of January 4, 2000 and the case closure order of April 16, 2002 herself, is in the best position to know what jurisdiction she intended to retain." While it is undoubtedly true that the judge who rendered the rulings is in the best position to know her subjective intent, we believe that such orders must be construed using an objective standard. That is, what is important is not what the judge subjectively intended; rather, what is important is what the judge communicated to the parties. Only that latter information provides a viable basis for the parties to go forward from the ruling and choose their course of conduct. Hence, no deference is appropriate. *Cf. Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 329-30 (2004) (construing a contract, which involves determining the intent of the parties from what they expressed in the language of their agreement, presents a question of law).

Accordingly, we conclude that the trial court erred when it concluded that it had retained jurisdiction only regarding the issue of visitation.

■ Before closing, we note that Ti. O. makes a substantial constitutional attack upon the entire statutory scheme. While recognizing that the establishment of a private guardianship followed by the closure of a case does not, in itself, constitute a *de facto* termination of parental rights (see *In re Robert H.*, 353 Ill. App. 3d 316, 320-21 (2004)), Ti. O. points out that she possesses certain residual parental rights, which are recognized by section 1—3(13) of the Act (705 ILCS 405/1—3(13) (West 2004)). Indeed, section 1—3(8), which defines "[g]uardianship of the person," makes a guardianship "subject to residual parental rights and responsibilities." 705 ILCS 405/1—3(8) (West 2004). Ti. O. argues that if, in fact, she is unable to assert and enforce these rights due to the trial court's closure of the case, these

rights are meaningless. If, then, she in fact has no enforceable parental rights, though they are recognized by section 1—3(13), her parental rights have been effectively terminated. Under such circumstances, she contends, she should have been given the benefit of the heightened protections a respondent enjoys in a termination case. See, *e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 769, 71 L. Ed. 2d 599, 617, 102 S. Ct. 1388, 1403 (1982). Ti. O. buttresses this argument by pointing out that, if the guardianship had been vacated and another established under the Probate Act, section 2—33 of the Act would allow her to file a "supplemental petition to reinstate wardship" (705 ILCS 405/2—33 (West 2004)). No such provision exists for a guardianship established solely under the Act. Ti. O. sees no reason for the difference in treatment of parties depending upon whether the guardianship was transferred out of the juvenile court and into probate.

Ti. O.'s arguments are rather compelling; however, given our resolution of this case, it would be improper for us to address them here. Generally, a court should avoid addressing constitutional issues if they are not necessary to the resolution of a case. *People v. Youngerman*, 342 Ill. App. 3d 518, 528 (2003). Accordingly, we will leave them for another time.

In light of the foregoing, the order of the circuit court of Cook County dismissing Ti. O.'s petition is reversed. We remand this cause for further proceedings.

Reversed and remanded.

BYRNE and CALLUM, JJ., concur.