# Illinois Official Reports

## Appellate Court

*In re Julieanna M.*, 2018 IL App (1st) 172972

| | |
|---|---|
| Appellate Court Caption | *In re* JULIEANNA M., STEVEN M., MICHAEL M., and JAX M., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Iris M., Respondent-Appellant (Julieanna M., Steven M., Michael M., and Jax M., Respondents-Appellees)). |
| District & No. | First District, First Division<br>Docket No. 1-17-2972 |
| Filed | December 10, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 13-JA-1062, 13-JA-1063, 13-JA-1064, 13-JA-1065; the Hon. Nicholas Geanopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Amy P. Campanelli, Public Defender, of Chicago (Maurice Sykes, Assistant Public Defender, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Gina DiVito, Assistant State's Attorneys, of counsel), for the People.<br><br>Charles P. Golbert, Acting Public Guardian, of Chicago (Kass A. Plain and Christopher Williams, of counsel), for respondents-appellees. |

Panel                    JUSTICE GRIFFIN delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal arises out of a case brought by the State to terminate the parental rights of the respondent mother, Iris M., and the father, Brian M., and concerns the parental rights of their four minor children. The Cook County trial court terminated both parents' parental rights. Before us now is the respondent mother's appeal. The father also appealed the termination order, and we affirmed following counsel's withdrawal from representation under *Anders v. California*, 386 U.S. 738 (1967). *In re J.M.*, No. 1-17-2662 (June 25, 2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)). We affirm the trial court's judgment terminating respondent's parental rights and ordering that the minor children be placed for adoption.

¶ 2                              I. BACKGROUND

¶ 3    In their briefs in this appeal, the parties have provided lengthy recitations of the facts that led to the respondent mother's parental rights being terminated. However, respondent does not challenge the trial court's finding that she is an unfit parent or that the evidence supported the termination of her parental rights under the applicable statutory scheme. Respondent's only asserted basis for relief on appeal is that section 2-28 of the Juvenile Court Act of 1987 (705 ILCS 405/2-28 (West 2016)) is unconstitutional. Therefore, the majority of the facts recited by the parties are not pertinent to this appeal, and we will just address the relevant facts where appropriate—the facts are undisputed. Respondent did not file a reply brief.

¶ 4    The Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2016)) enumerates the grounds on which the court may find that a person is unfit to have a child. *Id.* § 1(D). One of those grounds for finding a parent to be unfit is where the parent fails to make reasonable progress toward the return home of the child or correct the conditions that were the basis for the removal of the child after the child has been adjudicated neglected or abused under the Juvenile Court Act. *Id.* § 1(D)(m). In this case, after a parental fitness hearing where the trial court received testimony from several doctors and clinicians, the trial court found that respondent was unfit under the Adoption Act because of her lifelong intellectual disability and failure to make reasonable progress toward the minors returning home.

¶ 5    As Illinois law requires (*In re O.S.*, 364 Ill. App. 3d 628, 633 (2006)), the trial court then moved to the "best interests portion" of the termination hearing. The trial court heard from the caseworker and from each of the children's foster parents and, after the hearing, found that it was in the best interests of the children that respondent's parental rights be terminated. The trial court entered termination orders and permanency orders for all four children. The new permanency goal for three of the children was adoption from their then-current foster relationships. One child, Michael, was given a final permanency goal of private guardianship rather than adoption because the foster parents knew respondent well and wanted her to continue to remain in Michael's life. The parties raise no issue with regard to the private guardianship permanency goal set for Michael.

¶ 6    Article II of the Juvenile Court Act contains the laws applicable to abused, neglected, or dependent minors. 705 ILCS 405/2-1 *et seq.* (West 2016). Section 2-28, which respondent argues is unconstitutional, gives the court the authority to determine the child's future legal status and set permanency goals. *Id.* § 2-28(2). Two of the available forms of permanency are adoption and private guardianship. See *id.* § 2-28(2)(D)-(E). Adoption is only an accepted permanency goal when parental rights have already been terminated or are relinquished. *Id.* § 2-28(2)(D). Permanent private guardianship is only an accepted permanency goal when short-term care options and adoption have already been ruled out. *Id.* § 2-28(2)(E). The basis for respondent's appeal is that the statute is unconstitutional because adoption requires the termination of parental rights and adoption must be ruled out as an option before guardianship can be considered as a permanency solution.

¶ 7                              II. ANALYSIS
¶ 8                        A. Jurisdiction and Mootness
¶ 9    The Public Guardian argues that we lack jurisdiction to hear respondent's appeal or that the issues she raises regarding the court review/permanency statute (*id.* § 2-28) are moot. The State, which joined the Public Guardian's arguments in all other respects, disagrees that the issues are moot or that we lack jurisdiction.

¶ 10   The Public Guardian contends that, because respondent never petitioned to appeal the January 2016 permanency goal set under section 2-28, we lack jurisdiction to address the order and the issues raised in the appeal are now moot. Our supreme court has stated that the "supreme court rules currently contain a provision which would allow for appeals of permanency orders to be brought on a discretionary basis in the appellate court." *In re Curtis B.*, 203 Ill. 2d 53, 61 (2002). That mechanism is Illinois Supreme Court Rule 306(a)(5) (eff. Nov. 1, 2017), which allows a party to petition for leave to appeal orders affecting the care and custody of minors. *In re Curtis B.*, 203 Ill. 2d at 61. "Under Rule 306(a)(5), a party who wishes to petition the appellate court for leave to appeal a permanency order may do so." *Id.* at 63; see also *In re Alicia Z.*, 336 Ill. App. 3d 476, 493 (2002). So it is clear that respondent could have petitioned to appeal the permanency goal when it was set in January 2016, but the Public Guardian argues that she cannot appeal it now—at the conclusion of the termination hearing.

¶ 11   Respondent is challenging the constitutionality of the statute—the portion that appears to favor adoption over private guardianship. She timely filed this appeal within 30 days after the entry of the orders terminating her parental rights and setting the permanency goal to adoption. Once the orders were entered terminating her parental rights and setting the final permanency goal to adoption, the case was over, and the prior, nonfinal interlocutory rulings are appealable. *In re E.L.*, 152 Ill. App. 3d 25, 30 (1987). While respondent could have petitioned to appeal the permanency orders when they were entered, she was not required to do so. And she is entitled to appeal the constitutionality of the statutory scheme that led to her alleged deprivation at the time that the orders in the case became final, which is now. Respondent did not need to file an interlocutory appeal to assert her objection to the constitutionality of the statute when the issue she raises ultimately arises from the final order. Respondent is challenging the statutory process that favors adoption over private guardianship as a final permanency goal, and she timely appealed from the order setting adoption as the final permanency goal. The issue is now ripe for review.

¶ 12            B. Whether Section 2-28 Violates a Parent's Right to Due Process

¶ 13            Respondent argues that the statutory scheme is unconstitutional on due process grounds. Respondent contends that section 2-28 of the Juvenile Court Act (705 ILCS 405/2-28 (West 2016)) deprives individuals of their fundamental liberty interest in the familial relationship, where the statute has a preference for adoption over private guardianship. The statutory scheme requires that adoption must be ruled out before private guardianship can be considered (*id.* § 2-28(2)(D)), and respondent believes those priorities are misplaced—that the court should be able to consider private guardianship without having to rule out adoption. According to respondent, "private guardianship is less restrictive than achieving the permanency goal of adoption" and, in this case, "achieves all of the stated goals of each party involved." Respondent's position is that, in this case, even though "the parents have been determined to be unfit it is not necessary to terminate all of their parental rights."

¶ 14            Procedures involved in terminating parental rights must meet the requirements of the due process clause. *In re M.H.*, 196 Ill. 2d 356, 363 (2001). In determining what due process requires with respect to the termination of parental rights, a court must consider (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances" but is instead flexible and calls for such procedural protections as the particular situation demands. (Internal quotation marks omitted.) *Id.* at 334.

¶ 15            The overarching purpose of the Juvenile Court Act is "to secure for each minor subject [t]hereto such care and guidance, preferably in his or her own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2 (West 2016). To do so, the Act aims to "preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her safety or welfare or the protection of the public cannot be adequately safeguarded without removal." *Id.* When the minor is removed from his or her own family, the Juvenile Court Act impresses on the interested parties to "secure for [the minor] custody, care and discipline as nearly as possible equivalent to that which should be given by his or her parents, and in cases where it should and can properly be done to place the minor in a family home so that he or she may become a member of the family by legal adoption or otherwise." *Id.*

¶ 16            Both the United States and Illinois Constitutions protect a parent's fundamental right in the care, custody, and control of her children. *In re M.H.*, 196 Ill. 2d at 362. When laws affecting fundamental liberty interests are challenged, the laws are subject to strict scrutiny. *In re D.W.*, 214 Ill. 2d 289, 311 (2005). For us to uphold a law under a strict scrutiny challenge, the law must be shown to serve a compelling government interest and employ the least restrictive means to further the attainment of the government's goal. *Id.* We review the constitutionality of a statute *de novo*. *Casey's Marketing Co. v. Hamer*, 2016 IL App (1st) 143485, ¶ 11.

¶ 17            There are several reasons respondent believes that private guardianship should be considered ahead of adoption and found to be a less restrictive way to accomplish the goals of the Juvenile Court Act and the Adoption Act. For adoption to be selected as a permanency

- 4 -

goal, parental rights must be terminated, whereas no termination of parental rights is required for guardianship. In guardianship, parents might retain a legal relationship with the child and have other residual rights not available in adoption. Private guardianship might also allow for the modification of rights if changes in circumstances occur, whereas adoption is final once it is complete. In this case, pointing to the result obtained for Michael, respondent maintains that private guardianship is an acceptable and less restrictive permanency goal for all of the children.

¶ 18    Respondent does not challenge the sufficiency of the evidence on which the court found her to be an unfit parent or that led the court to terminate her parental rights. Nor do we have any indication that the trial court might have chosen private guardianship if the statute was revised to respondent's liking. Nonetheless, respondent's position on appeal is simply that, insofar as her constitutional rights are concerned, private guardianship is a less restrictive alternative by which the State may achieve its interests than through adoption. Respondent maintains that, even if she should not have custody of her children, she should be afforded the opportunity to have some residual rights of parenthood that she loses through adoption.

¶ 19    Respondent's argument has superficial appeal because private guardianship ostensibly appears to be a less restrictive method of accomplishing the Juvenile Court Act's goals than adoption from the parent's perspective. However, the statutory preference for adoption does not violate a parent's right to due process because the only way to achieve the State's compelling imperative for stability for neglected and dependent children when the parent cannot now or in the future care for the child is to allow the child to be adopted into a safe and stable home. When the parent cannot care for the child and it is clear that the child cannot return home, the constitutional rights of the parents must be viewed in light of the constitutional rights of the children. See *In re D.T.*, 212 Ill. 2d 347, 364 (2004).

¶ 20    It is not and cannot be disputed that "the state, as *parens patriae*, has a compelling interest in protecting the welfare of children." *In re R.C.*, 195 Ill. 2d 291, 305 (2001). Our supreme court has held that the State's interest in protecting minors can be sufficiently compelling to satisfy strict due process scrutiny when the child is being raised by a parent who is, and will remain for an unreasonable time, unable to give the child proper care. *Id.* at 305-06. That is the situation in this case. Having established that there is a compelling government interest at stake, we move to whether the statute uses the least restrictive means for achieving its objective.

¶ 21    Adoption is given preference over guardianship when the natural parent cannot give proper care because adoption better insures the child's stability and permanency in a safe, comfortable environment. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 42. The state must act to meet the child's needs for safety and moral, emotional, mental, and physical welfare while also promoting the best interests of the community. 705 ILCS 405/1-2(1) (West 2016). Ultimately, the paramount consideration is the child's best interests. *In re Ashley K.*, 212 Ill. App. 3d 849, 879 (1991). In this case, there was a sincere need for the children to have some permanency. The family had been unstable and engaged with Department of Children and Family Services for most of the last 10 years or more.

¶ 22    The General Assembly has made a determination that private guardianship is an inferior option for children who cannot be returned to their parents. While the statutes default to the rights of the natural parents—removing a child from the custody of the parents only when necessary—the goals shift when a parent is not able to care for the child. See *In re D.T.*, 212 Ill.

2d at 364. Once a parent is found to be unfit, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* Adoption is the only effective way to effectuate that stability, and it enables the child to grow up in a new, permanent family, advancing the child's best interests.

¶ 23 Private guardianship does not accomplish the same goals. Private guardianship is not permanent or stable as it is revocable and subjects the children to uncertainty with regard to their custodial situation. *In re P.F.*, 265 Ill. App. 3d 1092, 1105-06 (1994); *In re Tr. O.*, 362 Ill. App. 3d 860, 864 (2005). In many cases, a natural parent having residual rights is actually harmful to the children, and that concern outweighs the parent's desire to have rights to the child. See, *e.g.*, *In re D.T.*, 212 Ill. 2d at 368 (the child spent 10 years in legal limbo with uncertainty about who to call " 'mom' " and where he could call " 'home' "); *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 29 (despite the mother's efforts, the best result was to sever that parent-child relationship for the child's imperative need for permanency and stability). For example, in this case, if private guardianship without a termination of parental rights was ordered, there were genuine concerns laid bare in the record, in particular about the father, that an attempt would be made to reconnect with the children that would harm their welfare. It is a realistic risk and concern in any case of private guardianship. Stability is not ensured and is, in fact, impeded.

¶ 24 Moreover, private guardianship is in absolutely no way precluded. If the trial court finds that it is in the best interests of the child that parental rights remain intact, it may rule out adoption and set the goal to private guardianship. There are a series of hearings and other prophylactic measures before adoption may be ordered that guard against any potentially erroneous deprivation and give parents every right to make their case for maintaining a legal relationship with their child. Section 2-28 does not promote a system-wide due process deprivation for parents of dependent children as respondent suggests; it just provides the sole method by which the court can consider the child's rights as truly paramount.

¶ 25 While terminating parental rights is always a serious measure, there was extensive evidence from the foster parents in this case regarding their willingness to allow respondent and the children to cultivate a relationship if adoption went forward. We are not only concerned with the parent's constitutional rights at this point. We also must protect the statutory and constitutional rights of the child. The child has a protected liberty interest in being raised in a " 'normal family home,' " a " 'loving, stable and safe home environment.' " *In re D.T.*, 212 Ill. 2d at 363. The Juvenile Court Act "establishes an elaborate and carefully tailored scheme to effect a balance between the constitutional rights of parents and the statutorily-created rights of children to health, safety, and protection." *In re O.S.*, 364 Ill. App. 3d at 638. Adoption is the only way to achieve finality—a permanent and stable situation for the child after years of uncertainty. A preference for adoption is not unconstitutional, as it is the means to surely carry out the compelling interest at stake and, in terms of section 2-28, it is sufficiently narrowly tailored to pass constitutional muster.

¶ 26                                    III. CONCLUSION

¶ 27 Respondent's position here is that, even though both parents were found to be unfit, "it is not necessary to terminate all of their parental rights." But the statute does not demand that parental rights be terminated; it directs the trial court, in its discretion, to make that decision in consideration of the best interests of the child. Respondent offers no developed argument that

the trial court's actual decision to terminate parental rights as being in the best interests of the children was erroneous or against the manifest weight of the evidence. The trial court terminated parental rights, based on the evidence, after hearing substantial testimony from several witnesses.

¶ 28 The statutes at issue give the parties and the court a fair and meaningful opportunity to address what final measures are in the best interests of the child. Section 2-28 passes constitutional muster because adoption is the least restrictive method that the State can pursue to resolve the array of competing interests and considerations that compose the serious, life-altering issues that make up its compelling interest of protecting dependent children. The statutory mechanics do not deprive those subject to it of their constitutional guarantee of due process.

¶ 29 Accordingly, we affirm.

¶ 30 Affirmed.