No. 3--04--0797

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2005

In
 
re
 TAYLOR B., ) Appeal from the Circuit Court

a Minor ) of the 10th Judicial Circuit,

 ) Peoria County, Illinois,

(The People of the State of )

Illinois, )

 )

Petitioner-Appellee, ) No. 04--JA--39

 )

v. )

 ) 

Thomas B., ) Honorable

                                ) Timothy M. Lucas,

Respondent-Appellant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE SCHMIDT delivered the opinion of the court:

_________________________________________________________________

Taylor B. is the minor daughter of the respondent, Thomas B.  The trial court adjudicated Taylor to be neglected because of an injurious environment.  In its dispositional order, the court found that it was in Taylor's best interest to suspend visitation between the respondent and the minor.  On appeal, the respondent argues that the trial court erred by suspending visitation.  We affirm.

BACKGROUND

Taylor was born on August 17, 1989.  She lived with her mother until 1992, when her mother died of cancer.  The minor has been placed with various foster homes and subsidized guardians since her mother's death.

The respondent has been incarcerated several times during Taylor's life.  One of his incarcerations was the result of a conviction for the battery of Taylor by punching her in the face, which gave her a black eye.  According to the minor, the respondent also threatened to kill her.

One of Taylor's subsidized guardians was her paternal grandmother.  According to Taylor, on January 27, 2004, the minor was locked out of her grandmother's home and had nowhere to go.  Consequently, she went to a fire station and called the Department of Children and Family Services (DCFS).  Taylor's grandmother, however, claimed that Taylor was not locked out, but merely ran away from the home after failing to knock loudly enough for the grandmother to hear.  Nonetheless, the grandmother told DCFS that she did not wish to be Taylor's guardian any longer because of the minor's behavioral problems.

On January 29, 2004, DCFS petitioned the trial court to find Taylor neglected because of an injurious environment based on the grandmother having left Taylor alone with no care plan.  The court placed Taylor in shelter care on January 30, 2004.  On June 14, 2004, the court adjudicated Taylor to be neglected based on an injurious environment.

The court held the dispositional hearing on October 4, 2004.  At that time, the respondent was incarcerated in the Illinois Department of Corrections (DOC).  The DOC transported him to the hearing.

At the dispositional hearing, the court acknowledged receipt of various social history reports and addendums prepared by Catholic Charities (CC).  These reports indicated that Taylor had told caseworkers that she feared the respondent and did not want to have contact with him.  Taylor had told the caseworkers that she planned to obtain an order of protection against the respondent after he was released from the DOC.

The respondent has an extensive criminal history.  At the time of the hearing, he was serving a six-year sentence for witness harassment, which he had begun to serve in January 2004.

The respondent testified at the hearing.  He said that he would like to communicate with Taylor, but that she would not communicate with him.  The respondent stated that other family members were not helping matters.  Initially, he said that he did not wish to return to court concerning the case.

During closing arguments, the guardian 
ad
 
litem
 (GAL) for Taylor stated:

"My client wishes no contact with [the respondent].  If *** and when he were to get out of jail, she would be filing an order of protection against him anyway.  Therefore, I would definitely ask that the Court do not order any visitation privileges, no phone contact, no letter.

He punched her in the eye, he's threatened her that he's going to kill her, and I don't blame her for being scared of him, as she's indicated to many people, the caseworker and myself."

The court made Taylor a ward of the court and named DCFS as her guardian.  Then, the following exchange took place between the judge and the respondent:

"[THE COURT:] Based upon [the respondent's] statement at this time with respect to visits, it would appear that it would be in the best interest of the minor that there not be visits under the circumstances until some of this is resolved.

Now, this case is going to be reviewed in the normal course of the statute, Mr. [B].  The next court date for that review is going to be March 21st at 1:15.  ***  Are you telling me that you do not wish to be brought back?  ***

[THE RESPONDENT]: Despite the contrary, Your Honor, March will suffice, *** I don't mind being here in March.

THE COURT: So the answer to my question is, yes, you wish to be here?

[THE RESPONDENT]: Yes, yes."

The court issued its dispositional order on October 4, 2004.  In the order, the court found the respondent to be unfit and ordered him, among other things, to cooperate with DCFS and CC, to obtain drug and alcohol assessments, to complete any drug and alcohol treatment recommended as a result of the assessments, to obtain anger management counseling, and to complete a parenting course.  The court also ordered Taylor to cooperate with independent living classes, to attend school regularly, and to participate in counseling.  The order stated, "The Court finds it is in [the] minor's best interest to suspend visitation based upon [the] GAL's representations and Taylor's statements to her caseworker."  The respondent appealed.

ANALYSIS

The respondent contends that the trial court erred by suspending his visitation with Taylor in its dispositional order.

On review, we will reverse a trial court's dispositional determination only if the court's findings of fact are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order.  
In re K.S.
, 343 Ill. App. 3d 177, 796 N.E.2d 215 (2003)
.

Under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1--1 
et
 
seq
. (West 2004)), a parent retains residual rights and responsibilities concerning a minor "after the transfer of legal *** guardianship of the person, including, but not necessarily limited to, the right to reasonable visitation (which may be limited by the court in the best interests of the minor as provided in subsection (8)(b) of this Section)."  705 ILCS 405/1--3(13) (West 2004).  Subsection (8)(b) of section 1--3 states that a guardian's duty and authority concerning a minor are "subject to residual parental rights and responsibilities" including, but not limited to, "reasonable visitation, except to the extent that these have been limited in the best interests of the minor by court order."  705 ILCS 405/1--3(8)(b) (West 2004).

The respondent cites 
In re S.J.K.
, 149 Ill. App. 3d 663, 500 N.E.2d 1146 (1986), and 
In re P.F.
, 265 Ill. App. 3d 1092, 638 N.E.2d 716 (1994), for the proposition that, under the Act, a trial court is required to issue an order of protection for a specified period when it suspends a parent's residual visitation rights.  Regarding the present case, the respondent submits that the trial court erred by suspending visitation without issuing an order of protection for a specified period.

S.J.K.
 and 
P.F.
 considered earlier versions of the Act than the version in effect at the time of the present case.  
S.J.K.
 analyzed the 1983 version of the Act, and 
P.F.
 dealt with the 1991 version.  In each case, the court said that the only provision of the Act permitting suspension of visitation was the subsection allowing the court to include an order of protection in the dispositional order.  See Ill. Rev. Stat. 1983, ch. 37, par. 705--2(2); Ill. Rev. Stat. 1991, ch. 37, par. 802--23(2).  The "order of protection" subsection, in each case, stated that such an order could require a person to stay away from the home of the minor for a specified period.  See Ill. Rev. Stat. 1983, ch. 37, par. 705--5(1)(a); Ill. Rev. Stat. 1991, ch. 37, par. 802--25(1)(a).  The 
S.J.K.
 and 
P.F.
 courts reasoned that, under the versions of the Act they were considering, a dispositional order suspending visitation must be in the form of an order of protection for a specified period.

Although the version of the Act in effect at the time of the instant case includes subsections similar to those in effect in 1983 and 1991 (see 705 ILCS 405/2--23(2), 2--25(1)(a) (West 2004)), the 2004 version of the Act also includes a subsection that was not in effect in 1983 and 1991.  The new subsection states that "[t]he court also shall enter any other orders necessary to fulfill the service plan, including, but not limited to *** (ii) restraining orders controlling the conduct of any party likely to frustrate the achievement of the goal, and (iii) visiting orders."  705 ILCS 405/2--23(3)(ii), (3)(iii) (West 2004).  Because the version of the Act in effect at the time of the instant case included a new subsection concerning "restraining orders" and "visiting orders" that was not considered by the 
S.J.K.
 and 
P.F.
 courts, we find the holdings of those cases
 to be inapplicable to the present cause.

According to this court's research, the statutory construction of subsections 2--23(3)(ii) and 2--23(3)(iii) is a matter of first impression.  
When analyzing a statute, our goal is to ascertain and give effect to the legislature's intent.  
Paris v. Feder
, 179 Ill. 2d 173, 688 N.E.2d 137 (1997).  The best indication of legislative intent is the plain and ordinary meaning of the language in the statute.
  
Paris
, 179 Ill. 2d 173, 688 N.E.2d 137.
  
The construction of a statute is a question of law, which we review 
de
 
novo
.  
Quad Cities Open, Inc. v. City of Silvis
, 208 Ill. 2d 498, 804 N.E.2d 499 (2004).

In the present case, the trial court's order suspended the respondent's residual visitation rights in the best interests of the minor.  The written order did not state a time period for the suspension.  However, at the dispositional hearing, the court said that the suspension was to last "until some of this is resolved."  When a conflict exists between the court's 
oral pronouncement
 and its written order, the
 oral pronouncement prevails.  
See 
People v. Smith
, 242 Ill. App. 3d 399, 609 N.E.2d 1004 (1993).
  The court also ordered both Taylor and the respondent to undergo various forms of counseling and to attend classes, including anger management for the respondent.  The matter was scheduled for a review hearing on March 21, 2005, at which time the court could have determined if the tasks assigned to Taylor and the respondent had begun to "resolve" the intense emotional conflicts between Taylor and her father.

Under the plain language of section 2--23(3), the trial court's order suspending visitation was both a "restraining order" and a "visiting order," that is, an order "restraining" the respondent from "visiting" with Taylor "until some of this is resolved."  See 705 ILCS 405/2--23(3)(ii), (3)(iii) (West 2004).  The trial court found this order was necessary so as not to frustrate the goals, which were integral parts of the court's "service plan." 

It should be noted that neither the "restraining order" subsection of the Act (705 ILCS 405/2--23(3)(ii) (West 2004)), nor the "visiting order" subsection (705 ILCS 405/2--23(3)(iii) (West 2004)) mentions a time limitation.  Conversely, the "order of protection" subsections (705 ILCS 405/2--23(2), 2--25(1)(a) (West 2004)) require such an order to be for a "specified period."

Under the plain language of the 2004 version of the Act, the trial court's order suspending visitation was authorized by subsection 2--23(3) as a matter of law.  Furthermore, the order placed reasonable limits on visitation that were in the best interests of the minor.  See 705 ILCS 405/1--3(8)(b) (West 2004).  Therefore, we hold that the court did not abuse its discretion 
by selecting a dispositional order
 suspending visitation without issuing an order of protection for a specified period.  See 
K.S.
, 343 Ill. App. 3d 177, 796 N.E.2d 215
.

Additionally, we note that the trial court had scheduled a review hearing for March 21, 2005, at which time the respondent

could have asked the court to review the issue of visitation.  Presumably, the respondent may ask the court to review the issue 

of visitation at subsequent hearings concerning this case.

We also note that the trial court knew that Taylor had told her caseworkers and her GAL that she intended to obtain an order of protection against the respondent as soon as he is released from DOC custody.  Under the circumstances of this case, it would have been redundant for Taylor to seek an order of protection while the respondent was in prison.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and McDADE, JJ., concur.