No. 3--07--0112

Filed June 24, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

|  |  |  |
|---|---|---|
| In re K.L.S-P., | Appeal from the Circuit Court | |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 06--JA--112 |
| | ) | |
| v. | ) | |
| | ) | |
| Amber P., | ) | Honorable |
| | ) | David J. Dubicki, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

K.L.S-P. is the minor child of the respondent mother, Amber P. The trial court adjudged the minor to be neglected. Following the dispositional hearing, the court made the child a ward of the court, and gave the Department of Children and Family Services (DCFS) custody and guardianship of the minor. On appeal, the respondent argued that the court erred by (1) adjudging the child to be neglected; and (2) granting DCFS custody and guardianship of the minor. We reversed.

On April 8, 2008, the State filed a petition for rehearing, in which it contended that the

custody issue in this case does not meet the requirements of the public interest exception to the mootness doctrine. Additionally, the State submitted that, under the relevant statute (705 ILCS 405/2--23(1)(a) (West 2006)), a trial court may not restore custody of a child to a parent whose acts formed the basis of a neglect finding without first determining that the parent is both (1) fit; and (2) able to care for the minor without endangering the minor's health and safety. We disagree with the arguments in the State's petition, and modify our order accordingly.

## I. BACKGROUND

### A. Adjudication of Neglect

K.L.S-P., a male, was born on April 26, 2006. On May 8, 2006, the State filed a juvenile petition alleging that K.L.S-P. was neglected because of an injurious environment. In the petition, the State said that the child's environment was injurious for eight reasons, which the State alleged in paragraphs A to H.

In paragraph A, the State noted that the respondent mother was previously found unfit regarding K.L.S-P.'s two older siblings in November 2004 and July 2005, respectively, without a subsequent finding of fitness. Paragraph B made the same allegation as paragraph A, but with regard to the respondent father. Also, paragraph B alleged that the father's motion for fitness was denied in both cases regarding the siblings on April 18, 2006.

In paragraph C, the State submitted that the parents had not completed services that would allow the return home of the siblings. Paragraph D stated that the parents were previously indicated by DCFS for (1) the death of a fourth child by neglect and malnutrition in June 2002; and (2) risk of harm in September 2003 and October 2004. Paragraph D did not specify which child or children were the subjects of DCFS' risk of harm indications.

2

In paragraph E, the State alleged that on September 1, 2004, the parents took one of the minor's siblings from DCFS' protective custody and fled. Paragraph F listed the father's convictions for (1) driving while his license was revoked in 2004; (2) child abduction and concealment in 2004; (3) reckless driving in 2003; (4) possession of drug paraphernalia in 1999; and (5) possession of cannabis in 1994. In paragraph G, the State enumerated the mother's convictions for (1) child abduction and concealment in 2004; (2) retail theft in 1999; and (3) domestic battery in 1996.

Paragraph H submitted that the parents had a difficult time preventing the minor's siblings from encountering dangerous and harmful situations as evidenced by (1) a sibling crawling toward a space heater on September 5, 2005; (2) a sibling falling off a couch on October 20, 2005; (3) a sibling picking up a medicine bottle and a spray can on October 20, 2005; (4) a sibling playing in kitty litter spilled on the kitchen floor on December 1, 2005; (5) the mother giving a sibling a chicken nugget that was too large for the child to eat on March 28, 2006; and (6) a "sibling being left on concrete steps to climb up on his own" on April 4, 2006. In the respondent's answer to the petition, she "stipulate[d] that the State would call witnesses at Adjudication who would support the allegations contained in" paragraphs A, B, D, E, and G.

At the conclusion of the adjudicatory hearing, the court noted that the respondent had stipulated to the facts alleged in paragraphs A, B, D, E, and G. The court said that the State had proved paragraph F through exhibits. Regarding paragraph H, the court ruled that (1) none of the incidents concerning the space heater, the spray can, the kitty litter, the chicken nugget, and the concrete steps contributed to an injurious environment; and (2) it gave minimal weight to the child falling off the couch. Therefore, we will not discuss further the evidence that was

3

presented during the hearing concerning paragraphs A, B, D, E, F, and G, and those portions of paragraph H that the court either found to be of minimal value or did not consider in its ruling.

At the adjudicatory hearing, the State submitted exhibits 1 and 2 with reference to paragraph C of the neglect petition. These exhibits contained, among other things, the mother and father's motions for restoration of fitness regarding K.L.S-P.'s siblings. In the motions, the parents argued that they had substantially completed all of the tasks assigned to them by the court in previous dispositional orders concerning the siblings. These exhibits did not contain documents showing the court's rulings on these motions. The exhibits also did not include any documents indicating whether the parents had completed the tasks assigned to them in the previous dispositional orders.

The respondent father did not appear at the adjudicatory hearing. The respondent mother testified that regarding the tasks assigned to her concerning K.L.S-P.'s siblings, she had completed (1) three parenting classes; (2) a domestic violence training course; (3) a CPR adult and infant training course; (4) an intensive outpatient and aftercare treatment program for drug and alcohol abuse; and (5) a nutrition class. She said that she continued to provide random urine specimens twice per month, all of which had been negative for the presence of illegal drugs since the beginning of the present case. The mother stated that she and the father were in ongoing couples counseling, after which they would enter individual counseling. She had completed a neuropsychological evaluation and was following its recommendations. The mother also had completed a child development evaluation. In summary, the mother testified that she had substantially completed all of the services assigned to her in K.L.S-P.'s siblings cases, except for ongoing drug drops and counseling.

4

Susie Marizetts testified that she was a family advocate for Catholic Charities regarding this case. Marizetts stated that during her visit to the home on October 20, 2005, the mother and K.L.S-P.'s siblings were present. One of the siblings, who was born on October 14, 2004, picked up a bottle of prescription pills from a coffee table. Marizetts asked the mother to take the bottle from the child, which the mother did. On cross-examination, Marizetts acknowledged that during a subsequent visit to the residence, the respondent told Marizetts that the prescription pill bottles in the home had child-proof lids.

At the conclusion of the hearing, the court discussed the evidence presented regarding paragraphs A to H of the neglect petition. The court noted that (1) the respondent stipulated to the facts in paragraphs A, B, D, E, and G; (2) the State had proved paragraph C by the submission of exhibits 1 and 2, as well as the mother's testimony; and (3) the State had proved paragraph F through exhibits. The court did not state how much weight it gave to paragraphs A to G.

As noted above, the court gave either little or no weight to those portions of paragraph H except for the incident concerning the prescription pill bottle. The court stated that, regardless of the bottle's child-proof cap, the sibling's access to the bottle could have led to "disastrous" results. The court found, therefore, that this incident contributed to an injurious environment. The court adjudged that K.L.S-P. was neglected.

### B. Dispositional Order

At the conclusion of the dispositional hearing, the court made K.L.S-P. a ward of the court and orally found the respondent to be dispositionally "fit but reserved." Additionally, the court stated that "fit but reserved is fit." In the court's written dispositional order, the court

5

checked the box next to the statement that the respondent was "fit but reserved." The record does not indicate, and the court did not find, that the respondent was either unable or unwilling to care for the child. The court gave DCFS custody and guardianship of the child. The respondent appealed.

## II. ANALYSIS

### A. Adjudication of Neglect

The respondent contends that the trial court erred by finding K.L.S-P. to be neglected because of an injurious environment.

It is the State's burden to prove allegations of neglect by a preponderance of the evidence. In re Arthur H., 212 Ill. 2d 441, 819 N.E.2d 734 (2004). On appeal, a trial court's ruling of neglect will not be reversed unless it was against the manifest weight of the evidence. Arthur H., 212 Ill. 2d 441, 819 N.E.2d 734. A court's finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. Arthur H., 212 Ill. 2d 441, 819 N.E.2d 734.

The terms "neglect" and "injurious environment" do not have fixed definitions but, rather, take their meaning from the particular circumstances of each case. In re Gabriel E., 372 Ill. App. 3d 817, 867 N.E.2d 59 (2007). Thus, cases involving such allegations are sui generis and must be decided on the basis of their individual facts. Gabriel E., 372 Ill. App. 3d 817, 867 N.E.2d 59. Nonetheless, Illinois courts have described "neglect" as (1) the failure to exercise the care that circumstances justly demand; and (2) encompassing both willful and unintentional disregard of parental duty. Gabriel E., 372 Ill. App. 3d 817, 867 N.E.2d 59. Similarly, our courts have stated that even though an "injurious environment" is an amorphous concept, it has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for her child. Gabriel

6

E., 372 Ill. App. 3d 817, 867 N.E.2d 59.

In this case, the State filed its neglect petition on May 8, 2006. Following the adjudicatory hearing, the court found that the respondent had stipulated to the facts in paragraphs A, B, D, E, and G. We emphasize that the respondent only stipulated that the State would call witnesses whose testimony would support the allegations in these paragraphs. The respondent did not stipulate to the legal conclusion that K.L.S-P. was neglected because of these allegations.

Furthermore, the court did not indicate how much weight it gave to the stipulated paragraphs. Concerning paragraphs A and B, the respondent stipulated that in November 2004 and July 2005 the court had found both parents unfit with regard to K.L.S-P.'s two siblings without a subsequent finding of fitness. However, the evidence presented by the State did not show how these previous findings of unfitness were related to conditions in May 2006. See Arthur H., 212 Ill. 2d 441, 819 N.E.2d 734.

Regarding paragraph D, the respondent stipulated that she was previously indicated by DCFS in June 2002, September 2003, and October 2004. Concerning paragraph E, the respondent stipulated to an incident of child abduction that occurred in September 2004. Regarding paragraph G, the respondent stipulated that she had criminal convictions in 1996, 1999, and 2004. Through exhibits, the State proved the contentions in paragraph F that the father had criminal convictions in 1994, 1999, 2003, and 2004. Again, the evidence did not show how the allegations in paragraphs D to G contributed to an injurious environment in May 2006.

The court found that the State proved paragraph C through exhibits 1 and 2, as well as through the respondent's testimony. We disagree. Paragraph C stated that the parents had not completed services that would allow the return home of K.L.S-P's siblings. Exhibits 1 and 2

7

contained the respondents' motions for restoration of fitness regarding the siblings. These exhibits did not include the court's order denying the motions or any other evidence that the parents failed to complete their services regarding the siblings. Similarly, the respondent's testimony did not show such a failure to complete services. To the contrary, the respondent testified that she had substantially completed the services, except for those services that were ongoing, such as drug drops and counseling. Thus, we find that the State failed to prove the allegations in paragraph C.

Regarding the contentions in paragraph H, the court only gave substantial weight to the incident with the prescription pill bottle. This incident did not show evidence of an injurious environment. The sibling in question was born on October 14, 2004. The event took place on October 20, 2005. We find it extremely unlikely that a one-year-old toddler would be able to open a prescription pill bottle with a child-proof cap, resulting in the kind of "disastrous" consequences to which the court referred.

In summary, the evidence presented at the adjudicatory hearing did not show (1) the breach of the respondent's duty to ensure a safe and nurturing shelter for K.L.S-P.; (2) the respondent's failure to exercise the care that the circumstances justly demanded; or (3) either the willful or unintentional disregard of the respondent's parental duties. See Gabriel E., 372 Ill. App. 3d 817, 867 N.E.2d 59. We hold, therefore, that it was against the manifest weight of the evidence for the trial court to find K.L.S-P. to be neglected, because the opposite conclusion was clearly evident. See Arthur H., 212 Ill. 2d 441, 819 N.E.2d 734.

## B. Dispositional Order

The respondent submits that the court erred by granting the custody and guardianship of

8

K.L.S-P. to DCFS. We note that our reversal of the court's finding of neglect renders this issue moot. Nevertheless, we may consider the respondent's question under the public interest exception to the mootness doctrine. See Felzak v. Hruby, 226 Ill. 2d 382, 876 N.E.2d 650 (2007). Application of the public interest exception requires: (1) the existence of a question of public importance; (2) the desirability of an authoritative ruling for the purpose of guiding public officials in the performance of their duties; and (3) the likelihood that the issue will recur. In re J.T., 221 Ill. 2d 338, 350, 851 N.E.2d 1, 8 (2006).

In its petition for rehearing, the State concedes that this issue presents a question of public importance. Additionally, we find that it is desirable to guide trial judges in the performance of their duties because we have not previously ruled that a trial court may not make a child a ward of the court, and give custody and guardianship of the child to DCFS, after finding the parents fit. Furthermore, it is likely the question will recur because we have not previously so ruled. Therefore, we hold that the fitness issue in this case meets the three requirements of the public interest exception to the mootness doctrine. See J.T., 221 Ill. 2d at 350, 851 N.E.2d at 8.

Once a trial court adjudicates a child to be neglected, the court shall hold a dispositional hearing. 705 ILCS 405/2--21(2) (West 2006). In order to make a child a ward of the court, the court must determine that the parent is dispositionally unfit to care for the child. 705 ILCS 405/2--27(1) (West 2006); In re April C., 326 Ill. App. 3d 225, 760 N.E.2d 85 (2001).

If the child is made a ward of the court at the dispositional hearing, the court shall determine the proper disposition. 705 ILCS 405/2--22(1) (West 2006). If the child was found neglected, the court shall not return the child to the custody of the parent until the court enters an order finding the parent to be fit to care for the child. 705 ILCS 405/2--23(1)(a) (West 2006). If

the court determines that the parent is unfit, unable, or unwilling to care for the child, the court may commit the child to the care of DCFS. 705 ILCS 405/2--27(1)(d) (West 2006). We will reverse a trial court's dispositional determination only if the findings of fact are against the manifest weight of the evidence, or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. April C., 326 Ill. App. 3d 225, 760 N.E.2d 85.

When a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement prevails. In re Taylor B., 359 Ill. App. 3d 647, 834 N.E.2d 605 (2005). A trial court's disposition that is not authorized by statute is void. In re D.W., 214 Ill. 2d 289, 827 N.E.2d 466 (2005).

In In re R.W., 371 Ill. App. 3d 1171, 864 N.E.2d 1007 (2007), the trial court made both oral and written findings that the respondent was dispositionally "fit but reserved." The trial court also orally stated that it was reserving the respondent's fitness. In R.W., this court noted that the relevant juvenile statutes do not authorize a dispositional finding of "fit but reserved," but only a finding that a respondent is either fit or unfit. Consequently, we found the trial court's statements to be void that the respondent was "fit but reserved." However, we also said that the court's oral pronouncement that it was reserving the respondent's fitness was valid, which prevailed over its written and oral statements that the respondent was "fit but reserved." Therefore, we remanded the matter for the trial court to determine whether the respondent was dispositionally fit or unfit. R.W., 371 Ill. App. 3d 1171, 864 N.E.2d 1007.

Similarly, in this case, the trial court made both written and oral findings that the respondent was "fit but reserved." Unlike the facts in R.W., however, the court in the present case orally pronounced the respondent to be fit by stating that "fit but reserved is fit." As in

10

R.W., the court's findings that the respondent was "fit but reserved" were void because they were not authorized by statute. Applying the rationale of R.W. to this case, the court's oral pronouncement that the respondent was "fit" was a valid finding that prevailed over the court's written and oral findings that the respondent was "fit but reserved." See R.W., 371 Ill. App. 3d 1171, 864 N.E.2d 1007. Put simply, the trial court in this case found the respondent to be dispositionally fit.

We reiterate that the record does not indicate, and the court did not find, that the respondent was either unable or unwilling to care for the child. Having found the respondent to be fit, the trial court was not authorized to make the child a ward of the court and to grant custody and guardianship of the minor to DCFS. See 705 ILCS 405/2--23(1)(a), 2--27(1) (West 2006); April C., 326 Ill. App. 3d 225, 760 N.E.2d 85. Thus, we hold that the trial court abused its discretion by committing the minor to the care of DCFS after having found the respondent to be dispositionally fit and without having found the respondent to be either unable or unwilling to care for the child.

In its petition for rehearing, the State contends that under the second paragraph of section 2--23(1)(a) (705 ILCS 405/2--23(1)(a) (West 2006)), a trial court may not restore custody of a child to a parent whose acts formed the basis of a neglect finding without first determining that the parent is both (1) fit; and (2) able to care for the minor without endangering the minor's health and safety.

We disagree with the State's grammatical construction of the relevant portion of the statute. The plain language of the passage states that the court shall not restore custody of the minor to a parent whose acts formed the basis of the neglect finding, "until such time as a hearing

11

is held on the issue of the best interests of the minor and the fitness of such parent \*\*\* to care for the minor without endangering the minor's health or safety," and the court enters an order that the parent is fit.  705 ILCS 405/2--23(1)(a) (West 2006).

In the relevant portion of the statute, the phrase "to care for the minor without endangering the minor's health or safety" modifies "the fitness of such parent."  705 ILCS 405/2--23(1)(a) (West 2006).  Thus, under the plain language of the statute, a finding of fitness is, necessarily, a finding of "fitness \*\*\* to care for the minor without endangering the minor's health or safety."  705 ILCS 405/2--23(1)(a) (West 2006).  Contrary to the State's assertion, the statute does not require separate findings, in the conjunctive, of (1) fitness; and (2) ability to care for the minor without endangering its health or safety.  Put simply, the State's construction of the statute is grammatically incorrect.  Therefore, we reject this argument in the State's petition for rehearing.

CONCLUSION

For the foregoing reasons, we reverse the Peoria County circuit court's (1) finding that K.L.S-P. was neglected; and (2) dispositional order granting custody and guardianship of K.L.S-P. to DCFS.

Reversed.

MCDADE, P.J., and LYTTON, J., concur.

12