NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241207-U

NOS. 4-24-1207, 4-24-1208 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 7, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.P. and X.P., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos. 24JA15 |
| v. | ) | 24JA16 |
| Kristi P., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court granted appointed appellate counsel's motion to withdraw and affirmed the circuit court's judgment, finding no issue of arguable merit could be raised on appeal.

¶ 2   In August 2024, the circuit court entered an order finding respondent mother, Kristi P. (Mother), unable to care for her minor children, C.P. (born in October 2006) and X.P. (born in March 2008). The court adjudicated the minors neglected and abused and made them wards of the court. In September 2024, Mother appealed the court's dispositional order. Appointed appellate counsel has filed a motion to withdraw as counsel and a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re S.M.*, 314 Ill. App. 3d 682, 732 N.E.2d 140 (2000), arguing no nonfrivolous issue could be raised on appeal. We provided

Mother with notice of counsel's intent and an opportunity to respond and have received no response. For the following reasons, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On February 8, 2024, the State filed a petition for adjudication of wardship, alleging C.P. and X.P. were neglected and/or abused based on their living conditions. According to the petition, a sergeant with the Quincy Police Department and an investigator with the Illinois Department of Children and Family Services (DCFS) observed infestations of mice, maggots, and cockroaches in their home, along with "numerous animal droppings." The home had "several safety hazards," including fire hazards created by multiple appliances and electronics plugged into power strips and cords running under furniture. Officers executing a search warrant on the house observed cannabis and drug paraphernalia on a coffee table in the living room, which the minor children could access. Pursuant to the warrant, officer seized electronics from the house, and the minors' father, James P. (Father), was arrested and charged with three counts of child pornography in Adams County case No. 24-CF-97. In 2020, DCFS indicated both Mother and Father for environmental neglect based on similar living conditions.

¶ 5            On February 9, 2024, the circuit court entered a temporary custody order, finding there was an immediate and urgent necessity to remove the children from the home and placing them in the temporary custody of DCFS. When the children were taken into protective custody, C.P., a 17-year-old male, was living in the basement, where a water heater had exploded. The school he attended made provisions for him to shower there, and he was provided a "hygiene bucket" with necessary toiletry items. By February 2024, C.P. had missed 38 out of 108 days of the 2023-24 school year. X.P., a 15-year-old female, was living in the attic, with a space heater

- 2 -

as her only source of heat. After she reported she had not showered in weeks, the school began providing her a with a toothbrush, deodorant, and appropriate clothing when she arrived at school, as well as assistance brushing her hair. By February 2024, X.P. had missed 41 out of 110 days of the 2023-24 school year.

¶ 6        On July 19, 2024, DCFS filed a report indicating Mother still lived in the same house, which continued to have many safety hazards. After an inspection on June 25, 2024, it was determined the attic needed new ceiling tiles and appropriate air ventilation, the basement and main floor needed a deep cleaning, and the main floor needed new flooring, bathroom tiles, and kitchen cabinets. Additionally, an exterminator was needed to address the cockroach infestation. DCFS obtained funding for the exterminator and a new washing machine, but the home remained "in major disrepair and unfit for the children to return." Mother claimed she could not move "because she has 3 dogs, and her husband will need a residence when he is released from prison." Despite Father's conviction, Mother insisted he was innocent. Mother looked into renting a separate apartment, but based on her income from her part-time job, it was unclear whether she could afford to do so. Mother was permitted weekly supervised visitation with each child. In June 2024, Mother switched her visits from in-person to videoconference because the long drives—five hours to C.P.'s placement and three hours to X.P.'s placement— caused bruising on her legs and high blood pressure.

¶ 7        The report described the prognosis for Mother achieving reunification with the children within the next 5 to 12 months as "guarded." While Mother was cooperating with DCFS, maintaining her visits, and engaging in parenting classes and mental health treatment, her home was "still in need of major repair and has numerous environmental concerns." While DCFS secured funding to address some of those issues, it could not fix every problem that

existed within the home. The report recommended DCFS receive custody and guardianship of C.P. and X.P., with a goal of independence for C.P. and a return home goal for X.P., pending a status hearing.

¶ 8	On August 15, 2024, the circuit court conducted a dispositional hearing. Based on the report, the State argued Mother was unwilling to properly parent, care for, or protect the children, and placement with her would be contrary to their health and safety. The State requested Mother receive supervised visitation. The guardian *ad litem* (GAL) recommended Mother be found unable, rather than unwilling, to care for the children, and he echoed the State's recommendation that her visits with the children be supervised. Mother's counsel asserted Mother had made verbal arrangements to rent another property, she completed her parenting classes, and her contact with the children presented no safety concerns. Mother's counsel also noted another organization supervised Mother's visits with C.P. Based on this, counsel requested DCFS be granted discretion regarding visitation.

¶ 9	After the hearing, the circuit court entered a dispositional order finding the children were neglected and abused, making them wards of the court, and granting their guardianship and custody to DCFS. The court found Mother's visits would continue to be supervised by DCFS, and it set independence as C.P.'s goal and return home as X.P.'s goal, pending a status hearing. The order determined Mother was unable to care for the children based on her refusal to remediate the issues with their living conditions. Mother filed her notice of appeal on September 16, 2024.

¶ 10	This appeal followed.

¶ 11	II. ANALYSIS

- 4 -

¶ 12        On appeal, Mother's appointed appellate counsel filed a motion seeking leave to withdraw as counsel. Mother did not file a response. Appellate counsel argues no meritorious issue can be raised on appeal challenging the circuit court's finding Mother refused to remedy the conditions rendering her home unsafe for the minors' return and ordering her visits with the minors be supervised. We agree and grant the motion to withdraw as counsel.

¶ 13        As an initial matter, we find we have jurisdiction to consider Mother's appeal. "[T]his court has an independent duty to consider whether it has jurisdiction over an appeal and to dismiss the appeal if it finds that jurisdiction is lacking." *In re Tiona W.*, 341 Ill. App. 3d 615, 619, 793 N.E.2d 105, 108 (2003). "[A]ppeals from final judgments under the Juvenile Court Act [of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2022))] are governed by the rules applicable to civil cases." *In re Janira T.*, 368 Ill. App. 3d 883, 891, 859 N.E.2d 1046, 1053 (2006) (citing Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001)). "To vest an appellate court with jurisdiction, a party must file a notice of appeal within 30 days of the judgment from which appeal is sought." *In re J.J.*, 316 Ill. App. 3d 817, 826, 737 N.E.2d 1080, 1087 (2000); see Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). The circuit court entered the dispositional order from which Mother appeals on August 15, 2024. Mother filed her notice of appeal 32 days later, on September 16, 2024. However, the final day of the 30-day filing window fell on a Saturday, and we exclude Saturdays and Sundays from our computation when those days would otherwise be the final day to file an appeal. See 5 ILCS 70/1.11 (West 2022). Therefore, Mother's notice of appeal was timely filed.

¶ 14        We agree with counsel's assertion no nonfrivolous argument can be made challenging the circuit court's judgment. "[A] dispositional order entered in a proceeding under the [Act] is a matter committed to the sound discretion of the court." *In re Beatriz S.*, 267 Ill.

App. 3d 496, 500, 641 N.E.2d 953, 956 (1994). "The paramount consideration in proceedings under the Act is the best interests of the child." *In re J.T.*, 2024 IL App (1st) 232041, ¶ 67. The circuit court is best positioned to determine a child's best interests, and we afford such decisions "broad discretion and great deference." *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). The court "has the best opportunity to observe the demeanor and conduct of the parties and witnesses and, therefore, is in the best position to determine the credibility and weight of the witnesses' testimony." *E.S.*, 324 Ill. App. 3d at 667. We will reverse a court's dispositional determination "only if the court's findings of fact are against the manifest weight of the evidence." *In re Taylor B.*, 359 Ill. App. 3d 647, 650, 834 N.E.2d 605, 607-08 (2005). "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48, 187 N.E.3d 763.

¶ 15        In her notice of appeal, Mother protests the circuit court's determination she refused to remediate the conditions making her home unsafe for the children's return. The record clearly supports the court's conclusion. According to the DCFS report, Mother's home still needed "major repair" and presented "numerous environmental concerns" several months after the children were placed in shelter care. While DCFS secured funding for a new washing machine and a cockroach exterminator, DCFS could not fix all the remaining problems. The court's determination regarding Mother's failure to address the unsafe living conditions which led to the children's removal from her care was not against the manifest weight of the evidence, as multiple issues with the residence remained unresolved. See *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 16        Mother's notice of appeal also contests the circuit court's order that her visits with C.P. and X.P. would continue to be supervised by DCFS. After reviewing the report and hearing

arguments from the State, GAL, and Mother's counsel, the court determined it was in the children's best interests for Mother's visits to remain supervised. Mother's visits had been supervised for the duration of the case, and the State and GAL recommended they continue to be supervised. Mother's counsel argued Mother was not a safety threat to the children during visits and noted another organization supervised Mother's visits with C.P., though she did not make any specific argument regarding Mother's visits with X.P. Based on the report and the arguments presented, the court ordered Mother's visits would continue to be supervised. Given the record before us and our deferential standard of review, we cannot say the court's decision was against the manifest weight of the evidence, as the opposite conclusion is not clearly apparent. *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 17                                    III. CONCLUSION

¶ 18        For the foregoing reasons, we grant appellate counsel's motion to withdraw as counsel because no meritorious argument can be raised on appeal, and we affirm the circuit court's judgment.

¶ 19        Affirmed.