THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT FRED SMITH, a/k/a Fred Smith, Defendant-Appellant.

Fourth District   No. 4—92—0234

Opinion filed March 4, 1993.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Albert Smith, pleaded guilty to one count of aggravated criminal sexual abuse in 1988. (Ill. Rev. Stat. 1987, ch. 38, par. 12—16.) Smith was sentenced to four years' probation, a condition of the probation being that he serve a term of periodic imprisonment. Smith's probation was revoked in 1992, due to his failure to comply with its terms. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—6—4.) Smith was sentenced to five years' imprisonment on the underlying offense

of aggravated criminal sexual abuse, with credit for 119 days served. Defendant appeals, alleging there are ambiguities in the record regarding the amount of credit to which he is entitled, and this case ought to be remanded to the circuit court for a determination of the amount of credit due. We disagree and affirm.

After his plea of guilty, defendant was sentenced to four years of intensive probation, ordered to obtain counseling, and ordered to serve a term of periodic imprisonment for 24 consecutive weekends, with credit for 31 days served. The periodic imprisonment was to be served beginning on September 9, 1988, and extending through the weekend of December 2, 1988.

In 1991, a petition to revoke probation was filed due to defendant's failure to report to the court services department. Later, at the probation revocation hearing, the State presented the testimony of both probation officers to whom defendant had been assigned. The probation officers testified that defendant had failed to report to them on numerous occasions, had moved from one county to another without obtaining permission or even notifying the probation department, and had failed to obtain court-mandated counseling. The petition was found proved, and defendant's probation was revoked.

On March 11, 1992, defendant was sentenced to five years' imprisonment on the underlying offense. The transcript reflects the circuit court orally ordered the defendant be given credit for the 31 days served. However, some additional discussion must have occurred, which was not transcribed, because the sentencing order provided defendant was to be given credit for 119 days served. The 119 days were apparently calculated as the total of the 31 days spent in custody prior to the 1988 sentencing, 87 days during the term of periodic imprisonment, and one day spent in custody prior to the probation revocation hearing. Defendant's sole contention on appeal is the matter must be remanded for a hearing regarding sentence credit because the ambiguities in the record make it impossible to determine the term of periodic imprisonment he actually served. We disagree.

At the 1988 sentencing hearing the trial court ordered the defendant to serve "a period of incarceration at periodic imprisonment for six months," specifying the defendant was to report for imprisonment on Fridays, and be released on Sundays, commencing on September 9, 1992. In the written order, the circuit court required the defendant to serve "24 consecutive weekends, with credit for 31 days served . . . imprisonment to commence on Friday, September 9, 1988 and to continue through each and every weekend thereafter, through and including the weekend of December 2, 1988." The defendant argues the

statements are conflicting and result in an ambiguity in the record regarding the amount of time actually served by the defendant. The defendant argues he may have served six months' periodic imprisonment, entitling him to 180 days' credit, or 24 weekends' periodic imprisonment, entitling him to 164 days' credit. The defendant additionally argues the specified dates of the periodic imprisonment are inconsistent with the number of weekends he was ordered to serve.

The issue of ambiguities in sentencing is generally brought before the court when the defendant alleges there is an inconsistency between the oral pronouncement of the circuit court and the written order of commitment, and the defendant files a motion to request the more favorable of the two be enforced. The analysis employed by such cases is equally applicable to the present case.

■ It is the oral pronouncement of the judge which is the judgment of the court. The written order of commitment is merely evidence of the judgment of the court. (*People v. Williams* (1983), 97 Ill. 2d 252, 310, 454 N.E.2d 220, 248.) When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement of the court controls. (*Spriggs v. United States* (9th Cir. 1955), 225 F.2d 865, 868; *Watkins v. Merry* (10th Cir. 1939), 106 F.2d 360, 361.) However, often apparent inconsistencies may be resolved by examining the record as a whole to determine whether the written order expresses the intent of the judge's oral pronouncement, or conforms to the oral pronouncement's sense and meaning but is merely set forth with greater specificity. Where looking at the record as a whole, if the written order is *not* inconsistent with the intent, sense and meaning of the circuit court's oral pronouncement, the written order will be enforced.

■ When the written order of judgment is arguably inconsistent with an oral pronouncement of the court in rendering a judgment, but is consistent with the court's intent in rendering the judgment, the written order will be enforced. In *People v. Hairston* (1990), 207 Ill. App. 3d 674, 566 N.E.2d 343, the defendant alleged the circuit court, in its oral pronouncement, stated the defendant was to be sentenced to eight years' imprisonment, yet the commitment order provided for 10 years' imprisonment. Accordingly, the defendant argued, on appeal, that the commitment order ought be amended to reflect an eight-year term of incarceration. The appellate court disagreed, noting that while the circuit court had made reference to an eight-year sentence in its oral pronouncement, it had begun by stating the defendant was to receive a 10-year sentence, and made consistent references to a 10-year sentence throughout the oral pronouncement.

Thus, the appellate court affirmed the defendant's 10-year sentence, holding, "[i]n the absence of a *clear conflict* between the commitment order and the trial court's judgment, the commitment order need not be amended." (Emphasis added.) *Hairston*, 207 Ill. App. 3d at 681, 566 N.E.2d at 347.

The Federal judiciary has further expounded upon this issue in *United States v. Gibas* (7th Cir. 1964), 328 F.2d 833. Gibas alleged the circuit court's oral pronouncement provided for a three-year term of imprisonment, yet the written order provided for a six-year term of imprisonment. Gibas filed a motion with the district court requesting the written order be amended to conform with the oral pronouncement of the court. (*Gibas*, 328 F.2d at 834.) Gibas' motion was denied and he appealed.

Gibas had been convicted of 35 counts of a multiple-count indictment. In orally rendering judgment, the circuit court sentenced defendant to " 'one year on each of the counts of the indictment upon which he was found guilty, the said sentence to be served as follows.' " (*Gibas*, 328 F.2d at 834.) The circuit court then detailed which sentences were to be served concurrently and consecutively. Apparently, the statements regarding concurrent and consecutive sentences would have the effect of providing for a total sentence of three years; however, the circuit court concluded by stating, " 'which makes a total of six years.' " (*Gibas*, 328 F.2d at 834.) The written order provided for a sentence of six years. The Seventh Circuit Court of Appeals found the conclusory statement made by the district court was evidence of an intent to sentence the defendant to six years; thus, although the written order of judgment apparently did not conform to the district court's oral judgment regarding the terms to be served concurrently and consecutively, it reflected the intent of the district court. Hence, the Seventh Circuit affirmed the judgment of the district court. *Gibas*, 328 F.2d at 834-35.

■■ Likewise, when the written order of judgment is more specific than the oral pronouncement of the court, the written order will be enforced if it is consistent with the sense and meaning of the court's oral pronouncement. In *People v. Tackett* (1985), 130 Ill. App. 3d 347, 474 N.E.2d 451, defendant's probation was revoked, and the court ordered defendant to serve an indeterminate sentence of not less than 6²/₃ years and not more than 20 years, with credit for time spent in custody. (*Tackett*, 130 Ill. App. 3d at 347, 474 N.E.2d at 452.) With respect to sentence credit, the written order provided defendant was to be given credit for the days defendant was incarcerated, but not for time served on probation but not in custody. (*Tackett*, 130 Ill.

App. 3d at 348, 474 N.E.2d at 452.) The defendant argued the oral pronouncement of the court and the written order were inconsistent and the written order should be amended to conform to the oral pronouncement. The appellate court noted a court may not increase a sentence once it has been imposed by denying credit for time served on probation. (*Tackett*, 130 Ill. App. 3d at 349, 474 N.E.2d at 452-53.) However, the appellate court affirmed the denial of credit for time served on probation, stating:

> "[I]t appears from the entire record that the trial judge merely did not fully articulate defendant's sentence when he pronounced it in open court. The subsequent written order, therefore, would not constitute an increase of its oral sentencing pronouncement but rather its full articulation." *Tackett*, 130 Ill. App. 3d at 351, 474 N.E.2d at 454.

The Federal judiciary has also expounded more fully on this issue in *LaClair v. United States* (7th Cir. 1962), 303 F.2d 602, where the defendant alleged there was an inconsistency between the oral pronouncement of judgment and the written order of commitment, and the oral judgment was too vague to support a consecutive sentence. LaClair was convicted of a total of 10 counts of bank robbery in six cases. On July 7, 1954, the district court orally pronounced judgment, sentencing the defendant to five terms of 20 years, four terms of 25 years, to be served concurrently, and one term of five years to be served consecutively, plus a total fine of $50,000. The court concluded the rendition of the sentence by stating the effect would be a 30-year sentence and a fine of $50,000. (*LaClair*, 303 F.2d at 603.) The defendant attempted to escape from jail on July 15, 1954. At the sentencing hearing on the attempt (escape) conviction, the United States' Attorney advised the court that defendant had previously been sentenced to 30 years' imprisonment and ordered to pay a fine of $50,000; also, the United States' Attorney apparently requested the sentence on the attempted escape conviction be imposed consecutively to defendant's previous sentence. (*LaClair*, 303 F.2d at 604.) The court orally sentenced defendant to five years' imprisonment to be served consecutively with the sentence received on July 7. The order provided for the same, but enumerated the case numbers for which sentences had been received on July 7. *LaClair*, 303 F.2d at 604.

The defendant sought to "correct" the written order to provide for a sentence of five years to begin on the date of imposition. (*LaClair*, 303 F.2d at 604.) The Seventh Circuit Court of Appeals found that although the district court judge referred to the sentence imposed on July 7 in the singular, reflecting his own statement of July

7, when he summarized the net effect of the sentences, the district court's oral statement set out the court's intent with fair certainty. The court further determined the written order was different from the oral pronouncement of the court only in that it set out the numbers of the six cases included in the sentence imposed on July 7. The court found that the sense and meaning of the written order was the same as the oral judgment of the court, despite the expansion in the wording. *LaClair*, 303 F.2d at 604.

In the present case there is no ambiguity regarding the defendant's sentence, because the oral pronouncement of the court and the written order are not inconsistent. The defendant alleges there is an ambiguity regarding the amount of time he served, because the trial court's oral pronouncement of sentence is inconsistent with the written order of commitment. We disagree and find the written order to be consistent with the intent of the circuit court.

The circuit court stated the defendant was to serve a term of periodic imprisonment for six months, reporting on Fridays, and being released on Sundays. The court intended for Smith to serve six months of weekends. There are, on average, four weekends in a month. Thus, utilizing the average, six months would contain 24 weekends. The written order ordered the defendant to serve 24 consecutive weekends. This reflects the intent of the circuit court's oral pronouncement; thus, under *Hairston* and *Gibas*, there is no inconsistency between the oral pronouncement of the court and the written order, because the written order is consistent with the intent of the circuit court. Moreover, as in *Tackett* and *LaClair*, the written order is not inconsistent with the oral judgment of the court, but merely sets forth the terms of the judgment with greater specificity. We reject the defendant's contention there is an ambiguity regarding the sentence.

The defendant additionally argues there is an ambiguity regarding the amount of time he was ordered to serve because the order of commitment provided he was to serve 24 consecutive weekends, yet it also provided the weekends were to begin on September 9, 1988, and extend through the weekend of December 2, which is a total of 13 weekends. These provisions are only inconsistent if one ignores the portion of the order providing defendant is entitled to 31 days' credit against his sentence for time spent in custody prior to sentencing.

In determining how to apply the 31 days' credit against the term of periodic imprisonment, the circuit court applied the credit for time spent in custody against the days which were *actually* to be spent in confinement under the order of periodic imprisonment. Each week-

end, defendant was to spend three days in confinement. Thus, the circuit court divided 31 by 3, resulting in a total of 10.3 weekends. Rather than requiring defendant to serve a partial weekend, the amount of credit was rounded up to 11 weekends. Accordingly, the defendant was required to serve 13 (24 minus 11) weekends. There is no inconsistency between the portion of the order providing for 24 consecutive weekends with credit for 31 days served, and the portion of the order providing the specific dates of confinement.

Defendant next argues that he is entitled to 164 days' credit because the written order provides for a sentence of 24 consecutive weekends. The term of a sentence of periodic imprisonment is to be calculated upon the basis of the duration of its *term* rather than upon the basis of the actual days spent in confinement. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—7—1(d).) Thus, although a defendant sentenced to 24 consecutive weekends (Friday through Sunday) actually spends 72 days in confinement (24 x 3), the *term* of the imprisonment for which he is given credit is 164 days (7 days in a week multiplied by 24 weekends minus 4 days, as defendant would be incarcerated for only 3 days in the first week). (See *People v. Floyd* (1986), 151 Ill. App. 3d 701, 703, 502 N.E.2d 1074, 1076.) If the order had only provided for the defendant to serve 24 weekends, reporting Fridays, and being released on Sundays, and the defendant had served the 24 weekends, his contention that he would be entitled to 164 days' credit would be correct.

However, the circuit court properly ordered that defendant be given credit for the 31 days previously served. This brings to our attention the interesting issue of how credit for time served is to be assessed *against a term of periodic imprisonment*. There are, theoretically, two methods under which the credit for time served could be applied *to* a term of periodic imprisonment. The credit for the time served could be applied against the term of periodic imprisonment, or, as in the present case, the credit could be applied against the basis of the days which are *actually* to be spent in confinement pursuant to the sentence of periodic imprisonment. Had the first method been applied in the present case, the 31 days served would have been credited against the 164-day term of periodic imprisonment. This could have resulted in the serving of 19 weekends by defendant. However, in the present case, the circuit court applied the credit for time spent in custody against the days which were *actually* to be spent in confinement under the order of periodic imprisonment, resulting in 13 weekends of imprisonment. The written order provided the term of periodic imprisonment be served beginning on September 9, 1988, and continuing

through the weekend of December 2, 1988. The weekend of December 2 ended on December 4. The period of September 9 through December 4 contains 13 weekends, and consists of a total term of 87 days (7 days in a week multiplied by 13 weekends, minus 4 days, as defendant would be incarcerated for only three days in the first week).

We need not rule on which method of applying credit against a sentence of periodic imprisonment is the proper method, since we believe the defendant, with respect to the present sentence, should be given credit for time served according to the method *actually* employed by the circuit court rather than under a method which the circuit court perhaps should have employed.

Consequently, the defendant should be given credit for the 31 days spent in custody prior to the 1988 sentencing hearing, 87 days for the term of periodic imprisonment as calculated by the circuit court, and one day for the day spent in custody prior to the hearing on the probation revocation, resulting in a total of 119 days' credit. This is the amount of credit which the circuit court has provided the defendant is to be given against his sentence of five years' imprisonment. There are only ambiguities in the record regarding the amount of credit to which defendant is entitled, and there is no need to remand to the circuit court for a hearing on the amount of credit.

The State urges us to find defendant's argument waived, since he failed to raise the issue of his sentence credit at the sentencing hearing or in a post-sentencing motion. While acknowledging this court's decision in *People v. Donnelly* (1992), 226 Ill. App. 3d 771, 779, 589 N.E.2d 975, 980, finding that errors in computing sentence credit are not subject to waiver, the State notes that the second and fifth districts have held to the contrary (*People v. Lewis* (1992), 235 Ill. App. 3d 1003, 1006, 602 N.E.2d 492, 493; *People v. Macke* (1992), 224 Ill. App. 3d 815, 816, 587 N.E.2d 1113, 1114). We rejected *Macke* in *People v. Turner* (1992), 233 Ill. App. 3d 449, 456, 599 N.E.2d 104, 109-10; however, this is the first time the recent *Lewis* decision has been brought to our attention.

In *Lewis*, the defendant appealed her sentence, alleging the court miscalculated the probationary term to which she had been sentenced, miscalculated the street-value fine which had been assessed, and failed to give credit for time served. (*Lewis*, 235 Ill. App. 3d at 1004, 602 N.E.2d at 492.) The defendant did not file a motion to reduce her sentence. The Second District Appellate Court made no reference to the fourth district cases on this issue; rather, the court adopted the fifth district's decision in *Macke*. Accordingly, the second district found

Lewis failed to preserve any error which might have occurred in sentencing and dismissed her appeal.

Recently, we have had the opportunity to consider whether a defendant's failure to raise issues regarding the amount of credit to which he is entitled at the sentencing hearing, or in a post-sentencing motion, waives appellate consideration of the issue. Although we have held it does not, we have expressed dismay that the State's Attorney and defense counsel failed to recognize the importance of attempting to resolve these issues in the trial court.

In *People v. Curtis* (1992), 233 Ill. App. 3d 416, 419-20, 599 N.E.2d 101, 103, we stated:

> "A sentencing hearing is a significant part of the trial process. The presentence report is a critical document. The information in a presentence report may be relied upon by the court, and the parties bear the responsibility of calling any inaccuracy to the court's attention. (See *People v. Powell* (1990), 199 Ill. App. 3d 291, 294-95, 556 N.E.2d 896, 898.) The vigorous advocacy of counsel in negotiating a plea or defending at trial should not wane at sentencing. Both the State's Attorney and defense counsel have an obligation to assist the court, and *both* are obligated to make sure the defendant receives neither more nor less than the time credit to which he is entitled. We see little justification or explanation for errors in computing such credit." (Emphasis in original.)

Similarly, in *People v. Steskal* (1992), 236 Ill. App. 3d 821, 823-24, 602 N.E.2d 977, 979, we stated:

> "Simply because we have not found waiver does not mean counsel and judges are relieved of their responsibility to ensure defendants receive appropriate sentences.
>
> The number of cases which raise sentencing issues for the *first time* on appeal indicates some prosecutors, defense counsel, and judges neglect their responsibilities at the sentencing stage of criminal proceedings. * * *
>
> * * * To facilitate imposing a proper sentence, the trial judge should direct the probation office to include within its presentence report a list of the days defendant was incarcerated on the charge which he is being sentenced on *and* the total of days for which defendant is entitled to credit. [Citation.] The trial judge should seek confirmation from defense counsel and the People as to the accuracy of this computation. [Citation.]
>
> Accurate computation of sentence credit, as well as post-sentencing motions, would lessen the instances in which sentencing

issues are raised on appeal for the first time." (Emphasis in original.)

Since we find the circuit court had a proper basis for calculating the sentence credit to which the defendant was due, we need not determine whether we ought reconsider our prior rulings on the waiver issue. However, we note, as we did in the *Curtis* and *Steskal* cases, that counsel and judges, in fulfilling their duties, should make an effort to determine the amount of credit in the trial court, rather than utilizing the appellate court as the first forum of determination.

The circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH and COOK, JJ., concur.