# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Whalum*, 2012 IL App (1st) 110959

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAMIAN WHALUM, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0959 |
| Filed | December 24, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for unlawful use of a weapon by a felon, the circumstances did not warrant relaxing the waiver rules pursuant to *Sprinkle* to allow consideration of defendant's claim that the trial court improperly limited his cross-examination of the arresting officer as to whether he was motivated by racial prejudice, but the cause was remanded for resentencing, since defendant was improperly sentenced as a Class X offender and the mittimus did not reflect the correct time defendant was incarcerated prior to sentencing and should have indicated a conviction on only one count |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-11294; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded for resentencing. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Jeffrey Svehla, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Tasha-Marie Kelly, and Gina DiVito, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Connors and Simon concurred in the judgment and opinion.

## OPINION

¶ 1    A jury convicted defendant, Damian Whalum, of unlawful use of a weapon by a felon. 720 ILCS 5/24-1.1(a), (e) (West 2010). The circuit court sentenced defendant to a 10-year prison term pursuant to the mandatory Class X sentencing provision in section 5-4.5-95(b) of the Unified Code of Corrections based on defendant's prior convictions in the state of Wisconsin. 730 ILCS 5/5-4.5-95(b) (West 2010). Defendant first asks this court to review, under either *People v. Sprinkle*, 27 Ill. 2d 398 (1963), or under the second prong of the plain error doctrine, whether the circuit court improperly limited his counsel's cross-examination of the arresting officer. We decline to review the merits of defendant's argument under either the *Sprinkle* doctrine or the plain error doctrine because the circuit court properly limited defense counsel's cross-examination of the arresting officer. Defendant also raises several issues regarding his sentence. The parties agree that the matter has to be remanded for resentencing because the circuit court improperly sentenced defendant as a Class X offender pursuant to section 5-4.5-95 (b) of the Unified Code of Corrections. 730 ILCS 5/5-4.5-95(b) (West 2010). The parties also agree that defendant's mittimus should be corrected to reflect the full number of days he spent in custody prior to sentencing. The parties, however, dispute the following issues: whether the circuit court erred in enhancing defendant's sentence from the Class 3 range into the Class 2 range and whether defendant's mittimus should be corrected to reflect that he was convicted of only one count of unlawful use of a weapon by a felon. Based on the resolution of these two sentencing issues, defendant's mittimus needs further correction, according to statute, to reflect the proper amount of mandatory supervised release defendant shall serve. We hold the circuit court erred when it sentenced defendant as a Class X offender and when it sentenced defendant in the Class 3 range for the offense of unlawful use of a weapon by a felon. We order the mittimus be corrected to reflect the following: the proper amount of presentence custody credit, the correct term of mandatory supervised release, and that defendant be sentenced to only one count of unlawful use of a weapon by a felon.

¶ 2                                    JURISDICTION

¶ 3        The circuit court sentenced defendant on February 25, 2011. Defendant timely filed his
notice of appeal on March 23, 2011. Accordingly, this court has jurisdiction pursuant to
article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and
606, governing appeals from a final judgment of conviction in a criminal case entered below.
Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).


¶ 4                                    BACKGROUND

¶ 5        The State charged defendant with two counts of unlawful use of a weapon by a felon.
Prior to trial, defendant filed a motion to quash his arrest and suppress evidence alleging that
the State had no legal justification for stopping his vehicle. At the hearing on the motion,
defendant called Officer Corey Pierce to testify. Officer Pierce testified that at approximately
12:35 p.m. on June 9, 2010, he was dressed in plain clothes when he stopped defendant for
not wearing a seat belt. He viewed defendant not wearing a seat belt when the car he was
driving was "traveling eastbound on 79th" while defendant was "going northbound from
Damen." He estimated he was "maybe 20, 25 feet" away from defendant. After curbing
defendant's vehicle, Officer Pierce observed defendant was not wearing a seat belt. Officer
Pierce then conducted a field interview of defendant and asked him for his driver's licence,
which defendant could not produce. Officer Pierce testified that "for officer's safety, my
partner put the passenger out of the vehicle. And as I looked down, I saw the suspect
ammunition on the rear driver's side floor." Officer Pierce clarified that defendant had a
passenger in his vehicle who was also detained during the traffic stop. He estimated that he
saw the bag of ammunition "five seconds after we took him out of the vehicle and detained
him." After running the registration of the vehicle, it was determined that defendant did not
own the vehicle.

¶ 6        On cross-examination, Officer Pierce testified that he was on routine patrol at the time
of the incident. The ammunition recovered from the vehicle "was 28, .357 caliber rounds and
44, .40 caliber rounds." He also issued defendant a citation for not wearing a seat belt and
for not being able to produce a valid driver's license. On redirect examination, Officer Pierce
testified that it was later determined at the police station that defendant had a valid driver's
license, but that he did not produce it on the scene. Officer Pierce could not recall if the
vehicle defendant was driving had tinted windows. The circuit court denied defendant's
motion.

¶ 7        At trial, Officer Pierce testified for the State. Officer Pierce testified he was in plain
clothes as a passenger in an unmarked police[1] vehicle driven by his partner, Officer Bolton.
They were assigned to the "Area 2 Saturation Division." Officer Pierce explained that "[w]e
go around in high crime areas, all the five districts in that area for high crime, like for guns,
narcotics, things of that nature." As during his pretrial testimony, Officer Pierce testified that

_____

[1]Officer Pierce later testified, both on direct examination and on cross-examination, that he
was in a marked police car. Officer Pierce's partner, Officer Bolton, testified at trial that they were
dressed in plain clothes, but in a marked police car.

they curbed defendant's vehicle after observing that he was not wearing a seat belt. He explained that defendant was in the driver's seat, while a passenger was in the front passenger side of the vehicle. Officer Pierce conducted a field interview, where defendant failed to produce a driver's licence. After defendant failed to produce a driver's licence, Officer Pierce asked defendant and the passenger to exit the vehicle. When defendant stepped out of the vehicle, Officer Pierce "noticed some ammunition on the driver's side floor." The ammunition was in the middle of the floorboard, "right where his feet were." Officer Pierce recovered 28, .357-caliber bullets and 44, .40-caliber bullets. The .357-caliber bullets were boxed, but in a plastic bag while the .40-caliber bullets were loose in a plastic bag. Officer Pierce testified that once he recovered the ammunition, defendant "just blurted out 'I was going to sell them.' " Officer Pierce handcuffed defendant for officer safety. He testified that the driver's side floorboard was not messy, and the bag of ammunition was in "plain view."

¶ 8    On cross-examination, defense counsel asked Officer Pierce about the "Saturation Unit." The following exchange occurred:

"MR. GOLDBERG [defendant's counsel]: What does saturation mean?

OFFICER PIERCE: You saturate the area. You go around the area, you know, looking for suspicious people, things of that nature; drug hot spots, you know.

Q. Would it be fair to say saturate means to take from dry and turn into welt [*sic*]?

A. I guess you could say that.

Q. And so, a dry situation that day was you saw an Oldsmobile being driven by a young black man, and he committed a serious violation for you to stop him?

A. Traffic violation, yes, sir.

***

Q. And that traffic violation was?

A. No seat belt."

¶ 9    Defense counsel proceeded to cross-examine Officer Pierce about the facts of the traffic stop. Officer Pierce testified that he and his partner asked defendant and the other passenger in the vehicle to exit the vehicle. Officer Pierce handcuffed defendant for officer safety. Defense counsel proceeded to ask Officer Pierce the circumstances of the field interview he conducted. The following exchange then occurred between defense counsel, Officer Pierce, and the court:

"MR. GOLDBERG: My question is, was your first question about field interview or traffic citation?

OFFICER PIERCE: It was a field interview.

Q. So, you wanted to interview these two young black men driving the car, take them out, handcuff them and then search the car?

THE COURT: I'm going to stop you right there. Earlier folks, I told you that you should not be influenced by any sympathy, bias or prejudice.

This occurring right now, Mr. Goldberg's intentional use of 'young black men,' is an effort to make you think about sympathy, bias or prejudice and not what was going on

out there on the street. Ethnicity is irrelevant in this case. There is no indication that the officers' actions had anything to do with any ethnicity.

Look at the witnesses and consider their testimony from the witness stand, and make a decision predicated on what the answers they give. Everybody understand that?

JURORS: Yes."

¶ 10    Officer Bolton's testimony concerning the traffic stop was consistent with Officer Pierce's testimony. Officer Bolton additionally testified that, in addition to admitting as much at the scene of the traffic stop, defendant also told him at the police station that he was going to sell the ammunition. The State rested after successfully having defendant's prior certified copy of conviction for the felony offense of delivery of a controlled substance on November 4, 2005, in the state of Wisconsin entered into evidence.

¶ 11    Defendant called his mother, Sharon Whalum, to testify on his behalf. Whalum testified that both the vehicle that defendant was driving and the ammunition in the vehicle were hers. She testified that she was a "disordered messy person" and that her car was also messy. Whalum testified she kept the bullets in her car in "[a]nticipation of obtaining a FOID[2] card." She kept the bullets in her car so that her grandchild at home would not find them in the house. She did not tell defendant that she had bullets in the car. On cross-examination, Whalum testified that she did not have a "FOID" card on the date defendant was arrested, but that she applied for one after defendant's arrest. She also did not own a gun at the time of defendant's arrest, only the ammunition. Whalum testified she purchased the ammunition from Walmart, but she did not have a receipt for the purchase. She bought the ammunition "[t]o take to the range to practice." On redirect examination, Whalum clarified that she kept the bullets under the seat in a spot that was not visible. Following Whalum's testimony, the defense rested. The State called Officer Bolton in rebuttal before resting.

¶ 12    After deliberating, the jury returned a verdict finding defendant guilty of unlawful use of a weapon by a felon. The circuit court denied defendant's motion for a new trial.

¶ 13    At sentencing, the State asserted that although defendant was convicted of two counts of unlawful use of a weapon by a felon, normally a Class 2 felony, due to his background, he qualified for mandatory Class X sentencing of between 6 and 60 years' imprisonment. The State provided certified copies of conviction for the following five offenses, all from Wisconsin: battery by a prisoner, bail jumping, "substantial battery intend bodily harm," "vehicle operator flee/elude," and felony delivery of a controlled substance, which was the predicate felony used to enhance defendant's unlawful use of a weapon charge. The State also informed the court that defendant had been convicted in Wisconsin of the following three misdemeanor offenses: resisting or obstructing a police officer, battery, and disorderly conduct. Defendant; his mother, Sharon Whalum; and a surrogate father, Darryl Robinson, testified in mitigation on defendant's behalf.

¶ 14    After considering the evidence in aggravation and mitigation, the presentence investigative report, the arguments of counsel, and the evidence at trial, the circuit court

---

[2]Whalum testified a "FOID card" is a "Firearm Identification Card."

found that because defendant had two prior Class 2 felonies, it had to sentence defendant as a Class X offender. The court sentenced defendant to 10 years in prison with 2 years of mandatory supervised release (MSR). The circuit court calculated that defendant should receive 174 days of credit for time served. Although the mittimus initially showed defendant's sentence to include a two-year term of MSR upon his release from prison, the circuit court issued a corrected mittimus showing defendant was to serve a three-year term of MSR. The court made the following statement at the conclusion of the sentencing hearing: "I'm going to find the two counts which he was convicted of merge. That's a concurrent sentence on both counts." The mittimus indicated defendant was sentenced on both counts.

¶ 15    Defendant timely appealed.

¶ 16                                    ANALYSIS

¶ 17    Defendant raises one trial issue and several issues regarding his sentence. We will address each issue in turn below.

¶ 18                                      Trial

¶ 19    Defendant first argues that the circuit court overstepped its role and violated his rights to due process and confrontation when it prevented his counsel from cross-examining Officer Pierce as to whether racial prejudice motivated the traffic stop that ultimately led to his arrest. Defendant concedes that he did not properly preserve this issue for our review, but urges this court to relax the rules on forfeiture in accordance with our supreme court's decision in *People v. Sprinkle*, 27 Ill. 2d 398 (1963), or alternatively, to review his claim of error under the substantial rights prong of the plain error doctrine, claiming the error involved his rights to due process and confrontation. He requests his conviction be reversed and that he be allowed to have a new trial on remand.

¶ 20    In response, the State argues that no extraordinary circumstances exist to justify relaxation of the forfeiture rules in this case. The State further argues plain error review is also not appropriate because no error occurred in this case. Specifically, no error occurred because the circuit court acted within its sound discretion when it stopped defense counsel from pursuing a line of questioning that attempted to show that Officer Pierce stopped defendant for racially motivated reasons because there was no evidence in the record of any racial motivation for the traffic stop. The State characterizes defense counsel's cross-examination of Officer Pierce as irrelevant, badgering, harassing, remote and repetitive. The State also points out that in addition to failing to object to the complained-of actions by the circuit court, defendant also failed to set forth an offer of proof indicating the evidence to be introduced. The State maintains that the alleged error by the circuit court was not a material factor in defendant's conviction and did not prejudice him.

¶ 21    Under the *Sprinkle* doctrine, the rules regarding forfeiture are applied less rigidly when the trial judge's conduct is at issue. *People v. Hanson*, 238 Ill. 2d 74, 117 (2010). Errors that are not preserved for appellate review will only be excused "in extraordinary circumstances." *People v. Thompson*, 238 Ill. 2d 598, 612 (2010). Further, "relaxing the waiver rule is warranted when the trial judge has overstepped its authority in the presence of the jury or

-6-

when counsel is effectively prevented from objecting as any objection would have 'fallen on deaf ears.' " *Hanson*, 238 Ill. 2d at 118 (quoting *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)); see also *McLaurin*, 235 Ill. 2d at 488 (listing the extraordinary circumstances "as when a trial judge makes inappropriate remarks to a jury [citation] or relies on social commentary, rather than evidence, in sentencing a defendant to death"). Our supreme court has stressed the importance of properly preserving issues for appeal and commented on the limited application of *Sprinkle*, stating:

> "We stress, however, that trial counsel has an obligation to raise contemporaneous objections and to properly preserve those objections for review. Failure to raise claims of error before the trial court denies the court the opportunity to correct the error immediately and grant a new trial if one is warranted, wasting time and judicial resources. [Citation.] That we have seldom applied *Sprinkle* to noncapital cases further underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations." *McLaurin*, 235 Ill. 2d at 488.

¶ 22    We hold that the extraordinary circumstances required to relax the rules on forfeiture and address defendant's argument on its merits are not present in this case. Defendant has not shown that the trial judge overstepped his authority or that "any objection would have 'fallen on deaf ears.' " *Hanson*, 238 Ill. 2d at 118 (quoting *McLaurin*, 235 Ill. 2d at 488). First, the trial judge in this case did not overstep his authority when he limited defense counsel's cross-examination of Officer Pierce. "A criminal defendant has a fundamental constitutional right to confront the witnesses against him and this includes the right to conduct reasonable cross-examination." *People v. Davis*, 185 Ill. 2d 317, 337 (1998). As such, defendant has "[t]he right to cross-examine a witness as to his biases, prejudices, or ulterior motives." *People v. Gonzalez*, 104 Ill. 2d 332, 337 (1984). However, "[i]t is well established that a trial judge retains wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or of little relevance." *People v. Harris*, 123 Ill. 2d 113, 144 (1988); *People v. Price*, 404 Ill. App. 3d 324, 330 (2010) ("The right to cross-examination is not absolute, and the trial court is given broad discretion to determine the extent of cross-examination at trial."); *People v. Faria*, 402 Ill. App. 3d 475, 479 (2010) ("the court may interject to avoid repetitive or unduly harassing interrogation").

¶ 23    In reviewing whether the trial judge improperly limited cross-examination of a witness, we must review the whole record, as opposed to isolated instances in the record. *Harris*, 123 Ill. 2d at 144-45. Our supreme court has explained:

> "As a reviewing court, we are not required to isolate the particular limitation on cross-examination to determine whether reversible error has occurred. [Citation.] Rather, 'the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony.' (*United States v. Rogers* (7th Cir. 1973), 475 F.2d 821, 827, quoting *Fountain v. United States* (5th Cir. 1967), 384 F.2d 624, 628.) In answering this question the court must look to the record as a whole and the alternative means open to the defendant to impeach the witness. [Citations.] Thus, if a review of the

entire record reveals that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because the defendant has been prohibited on cross-examination from pursuing other areas of inquiry." *Id.* at 145.

A trial judge may properly limit the scope of cross-examination if the defendant's inquiry is based on an uncertain or remote theory. *People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007). "When a line of questioning is objected to or denied by the trial court, the defendant must set forth an offer of proof either to convince the trial court to allow the testimony or to establish on the record that the evidence was directly and positively related to the issue of bias or motive to testify falsely." *Id.*; *People v. Andrews*, 146 Ill. 2d 413, 421 (1992) ("The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper. [Citation.] The failure to make an adequate offer of proof results in a waiver of the issue on appeal."). Further, the circuit court "is permitted to make rulings without objections from counsel." *People v. Thigpen*, 306 Ill. App. 3d 29, 40 (1999). We will not reverse the circuit court's decision to limit cross-examination absent an abuse of discretion. *Price*, 404 Ill. App. 3d at 330; *Tabb*, 374 Ill. App. 3d at 689.

¶ 24    In this case, after reviewing the entire record, we cannot say the circuit court abused its discretion when it limited defendant's cross-examination of Officer Pierce. Defense counsel extensively cross-examined Officer Pierce about the stop. Absent from the record is any evidence of a racial motivation for the traffic stop that led to defendant's arrest. Defendant's race was only brought up twice in the entire record, both times by defense counsel. During the cross-examination of Officer Pierce, defense counsel commented to Officer Pierce that "you saw an Oldsmobile being driven by a young black man," before asking Officer Pierce why he stopped defendant. Officer Pierce responded that he stopped defendant for not wearing a seat belt. In the second instance, the one defendant complains of here, is when the court objected when defense counsel again commented to Officer Pierce on cross-examination, "So, you wanted to interview these two young black men driving the car, take them out, handcuff them, and then search the car." This court has held that cross-examination may be limited where defendant's inquiry is uncertain or remote. *Tabb*, 374 Ill. App. 3d at 689. In this case, both Officer Pierce and Officer Bolton testified they stopped defendant for failure to wear a seat belt. Due to the complete lack of evidence of any racial motivation for the stop, we find defendant's allegation of a possible racial motivation for the traffic stop, argued for the first time on appeal, is remote and uncertain. Accordingly, the circuit court acted within its authority when it limited cross-examination of this remote and uncertain theory.

¶ 25    Additionally, there is no evidence in the record that "any objection would have 'fallen on deaf ears.' " *Hanson*, 238 Ill. 2d at 118 (quoting *McLaurin*, 235 Ill. 2d at 488). In fact, in his briefs before this court, defendant only complains of this one instance of alleged judicial misconduct. As mentioned above, once the trial judge objected, defendant did not object or make an offer of proof explaining the line of questioning he sought to pursue on cross-examination. Defense counsel could have easily asked for a sidebar in order to make his objections known on the record. See *McLaurin*, 235 Ill. 2d at 506 (Freeman, J., specially

concurring) (noting that attorney's fears of objecting to the conduct of a trial judge in front of a jury could "be avoided if defense counsel asks for a sidebar and during the course of the sidebar makes a standing objection to the question or comment for the record"). Nor did defense counsel make any offer of proof to explain why he was phrasing the question as he did. Accordingly, we hold that there are no extraordinary circumstances present in this case to apply *Sprinkle* and address defendant's contention on its merits.

¶ 26 In his reply brief, defendant asks us to review whether the circuit court erred in limiting his cross-examination under the second prong of the plain error doctrine. However, in order to proceed under either prong of the plain error doctrine, defendant must first show that an error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) ("To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred."). As discussed above, the circuit court acted properly within its discretion when it limited defense counsel's cross-examination of Officer Pierce. Therefore, we decline to review the merits of defendant's argument under the plain error doctrine.

¶ 27                                                   Sentencing

¶ 28 The parties agree that the matter has to be remanded for resentencing because the circuit court improperly sentenced defendant as a Class X offender. We agree with the parties that the circuit court improperly sentenced defendant as a Class X offender because the elements needed to sentence defendant in the Class X range pursuant to section 5-4.5-95(b) of the Unified Code of Corrections were not met. 730 ILCS 5/5-4.5-95(b) (West 2010).

¶ 29 We also agree with the parties' contention that defendant's mittimus should be corrected to reflect the full number of days he spent in custody prior to sentencing. The circuit court awarded him only 174 days of presentence credit. However, defendant was arrested on June 9, 2010, and remained in custody until he was sentenced on February 25, 2011, which would entitle him to 261 days of presentence credit. This court has the authority to order the clerk of the circuit court to correct the mittimus. *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995). Accordingly, we direct the clerk of the court to correct the mittimus to reflect 261 days of presentence credit.

¶ 30 The parties, however, dispute the following issues: whether the circuit court erred in enhancing defendant's sentence from the Class 3 range into the Class 2 range; and whether defendant's mittimus should be corrected to reflect that he was convicted of only one count of unlawful use of a weapon by a felon. Based on the resolution of these two sentencing issues, defendant's mittimus needs to be further corrected, according to statute, to reflect the proper amount of mandatory supervised release defendant shall serve.

¶ 31                                              Enhanced Sentence

¶ 32 Defendant argues the circuit court erred when it enhanced his conviction from a Class 3 offense to a Class 2 offense because the State failed to give notice in its charging instrument that it was seeking an enhanced sentence under section 111-3(c) of the Code of Criminal Procedure of 1963. 725 ILCS 5/111-3(c) (West 2010). Defendant maintains that even if the State had properly given him notice, his enhanced sentence would still be

improper because none of his prior convictions qualify as a forcible felony within the meaning of the statutory definition of the term. Defendant additionally argues that the State did not show that defendant's prior convictions involved great bodily harm such that they could be considered a forcible felony under the residual clause of section 2-8 of the Criminal Code of 1961. 720 ILCS 5/2-8 (West 2010). Defendant admits that he did not properly preserve this issue for appellate review, but contends that his sentence is void and can be challenged at any time.

¶ 33    In response, the State argues defendant forfeited review of this claim for failing to properly preserve it for appellate review. Alternatively, the State argues that it was not required to give defendant notice because it was not seeking an enhanced sentence based upon defendant's prior conviction; rather, it was imposing the sentence which was mandated by statute. The State maintains that defendant's Wisconsin convictions qualify as forcible felonies under the residual clause of section 2-8 of the Criminal Code of 1961. 720 ILCS 5/2-8 (West 2010).

¶ 34    Initially, we note that we will review the merits of defendant's claim because he challenges his sentence as void, which can be corrected at any time. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). Further, our review is *de novo* because it involves interpreting the construction of a statute. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). Section 24-1.1(e) of the Criminal Code of 1961 provides, in relevant part:

"Violation of this Section *** shall be a Class 3 felony for which the person *** shall be sentenced to no less than 2 years and no more than 10 years ***. Violation of this Section by a person *** who has been convicted of a forcible felony *** is a Class 2 felony for which the person shall be sentenced to not less than 3 years and not more than 14 years." 720 ILCS 5/24-1.1(e) (West 2010).

¶ 35    Section 111-3(c) of the Code of Criminal Procedure of 1963, provides in relevant part:

"(c) When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. *** For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level of classification of offense ***; it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111-3(c) (West 2010).

¶ 36    In *People v. Jameson,* our supreme court held:

"When the language of section 111-3(c) is considered in light of the legislative history of that statute, it is evident that the legislature intended that statute to reach those instances in which a prior conviction elevates the classification of the *offense* with which a defendant is charged and convicted, rather than simply the sentence imposed." (Emphasis in original.) *People v. Jameson*, 162 Ill. 2d 282, 288 (1994).

¶ 37    In this case, the State charged defendant with two counts of unlawful use of a weapon by a felon, but it did not say in the charging instrument what class of the offense it sought to charge defendant. Under section 111-3(c) of the Code of Criminal Procedure, the State was required to give defendant notice that it would seek to increase his classification of offense

from a Class 3 offense to a Class 2 offense. It failed to do so here. Accordingly, on remand, defendant should be sentenced for a Class 3 felony.

¶ 38                     Conviction of One Count or Two Counts

¶ 39        Defendant next argues that this court should correct the mittimus to reflect that defendant was only convicted of one count of unlawful use of a weapon by a felon, not two counts. Defendant acknowledges his mittimus shows he was convicted of two counts of unlawful use of a weapon by a felon, but argues that was improper where the circuit court stated, "I'm going to find the two counts which [defendant] was convicted of merge." Defendant admits that immediately after stating that the counts merge, the circuit court also stated, "That's a concurrent sentence on both counts," which would indicate that defendant was convicted of two counts. Defendant argues that any ambiguity in the court's statement is resolved by the fact that the jury was only given two verdict forms: one guilty, which the jury signed, and one not guilty. He also points out that the jury instructions did not indicate two counts based on the two different types of bullets found when defendant was arrested.

¶ 40        In response, the State argues that defendant was charged with two counts of unlawful use of a weapon by a felon because defendant possessed two different types of ammunition. It points to the mittimus to show that defendant was found guilty of both counts. The State maintains that the jury in the present case was given two general jury verdict forms, and that four verdict forms were not necessary, relying on this court's opinion in *People v. Kulpa*, 102 Ill. App. 3d 571, 576 (1981). The State admits that the court's statements at sentencing were "not entirely clear," and that "[a]n oral pronouncement of the trial court controls, where the pronouncement conflicts with the written judgment," but maintains that the court's statement "[t]hat's a concurrent sentence on both counts" is consistent with defendant's conviction of two counts. The State asserts that in the absence of a clear conflict between the court's oral pronouncement and the mittimus, the commitment order does not need to be amended.

¶ 41        Although a written order of the circuit court is evidence of the judgment of the circuit court, the trial judge's oral pronouncement is the judgment of the court. *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993). "When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." *Id.*

¶ 42        In this case, the mittimus and the trial judge's oral ruling are in conflict because the mittimus shows that defendant was convicted of two counts of unlawful use of a weapon by a felon, but the trial judge made an oral finding that the counts merge. It is undisputed that the trial court's oral rulings control over its written order. *Id.* However, immediately after stating the finding that the counts merge, the trial judge also stated "[t]hat's a concurrent sentence on both counts." Unusually, this seems to indicate that the trial judge immediately contradicted his own oral ruling because stating that defendant was to serve a concurrent sentence indicates that the two counts did not merge. However, when the circuit court announced defendant's sentence, it stated "[t]his sentence, on this case, will be ten years Illinois Department of Corrections." Absent from this statement is any mention of concurrent sentences, lending credence to defendant's argument that the counts merge. We hold that although defendant was convicted of two counts of unlawful use of a weapon by a felon, the

circuit court intended to merge those two counts as shown by its specific statement that the counts merge. Although it appears the circuit court immediately contradicted itself by referring to "both counts," our review of the trial judge's oral pronouncement of defendant's sentence as 10 years in prison, without mention of both counts or concurrent sentences, combined with the court's direct statement that "the two counts for which he was convicted of merge," show the circuit court intended to merge defendant's two convictions under one count. Accordingly, the mittimus should be further corrected to reflect defendant's conviction for only one count of unlawful use of a weapon by a felon.

¶ 43                                    Mandatory Supervised Release

¶ 44        The parties agree that the circuit court's imposition of a three-year MSR term was improper. The imposition of an MSR term is automatic depending on the class of offense defendant was convicted of. Due to our conclusion that defendant be sentenced on remand in the Class 3 range, defendant's MSR term on remand should be reduced to one year. 730 ILCS 5/5-4.5-40(*l*) (West 2010).

¶ 45                                           CONCLUSION

¶ 46        The judgment of the circuit court is affirmed in part, reversed in part, and remanded for resentencing.

¶ 47        Affirmed in part and reversed in part; cause remanded for resentencing.