2025 IL App (2d) 250085-U
No. 2-25-0085
Order filed November 21, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MAFATLAL THAKKAR, | ) | Appeal from the Circuit Court |
| | ) | of Kane County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 24-MR-198 |
| | ) | |
| CITY OF AURORA, | ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The hearing officer did not err in assessing fines for violations of the city's building code where plaintiff building owner did not contest the city's claim that his property was not up to code and instead argued that he was unable to make timely repairs due to the unavailability of scaffolding. Affirmed

¶ 2   Plaintiff Mafatlal Thakkar challenges the imposition of $14,500 in fines for violations of the City of Aurora's (the City) building code (Code of Ordinances, City of Aurora, Illinois, Chapter 12 *et seq.* (2024)). For the following reasons we affirm.

¶ 3                                    I. BACKGROUND

¶ 4   On May 6, 2024, the city inspector conducted an inspection of a home owned by plaintiff

and located at 14 S. Russell Avenue, Aurora, Illinois (the Property). On May 16, 2024, a summons was issued to plaintiff by the city's code hearing officer relating to 26 code violations at the Property. The code violations related to both the interior and exterior of the Property including the chimney. A hearing was held on June 6, 2024, and the case was continued for a week to allow for an inspection of the Property.

¶ 5    The city inspector prepared an inspection report following an inspection of the Property on June 11, 2024. The city inspector found that 14 violations had been cured and 12 violations remained, with two of the uncured violations being considered "life safety" violations. The report included five photographs showing disrepair to the home's chimney, ceiling, wall, porch, and window.

¶ 6    Another administrative hearing was held on June 13, 2024, wherein the hearing officer found that there were still 12 outstanding violations and issued a fine of $500 per day until the violations were cured. While some of plaintiff's statements at the hearing are incomplete due to portions of the recording of the proceedings being inaudible, plaintiff argued that his contractor was unable to address all of the violations due to the height and difficulty reaching the noncompliant portions of the Property (presumably discussing the chimney).

¶ 7    On June 24, 2024, plaintiff filed a complaint for administrative review in the circuit court.

¶ 8    The city inspector prepared another inspection report following an inspection of the Property on June 25, 2024. The city inspector went to the Property and observed plaintiff's contractor there, although plaintiff was not. The inspector spoke to plaintiff on the phone, and he stated he was having car trouble. The inspector noted that the four violations he could see from public areas had not been cured. The report included five photographs of the home's chimney, roof, and brickwork near the front door.

¶ 9    On June 27, 2024, another administrative hearing was held before the hearing officer. The city inspector stated that he was unable to complete his last inspection due to plaintiff not appearing. The inspector stated that he spoke to plaintiff's contractor, who stated that scaffolding would be needed to complete repairs to the chimney, since it would collapse if a ladder was put against it. The contractor estimated that it would be around 30 days before he could get scaffolding. The inspector indicated that there were still other violations which could be addressed, including adding carbon monoxide detectors and repairing the roofing. Plaintiff argued that "all the things are so minor[,]" but did not contest the existence of any of the violations. The Hearing Officer told plaintiff, "I'll make you this deal. You get everything else done except for the scaffolding and we'll talk about that on the next day." The case was then continued for two weeks.

¶ 10   The city inspector prepared another inspection report following an inspection of the Property on July 8, 2024. The city inspector noted that the exterior work had not been completed and that he was not able to inspect the interior, as plaintiff did not have a key.

¶ 11   On July 11, 2024, another hearing was held before the hearing officer. Now aware that plaintiff had sought administrative review in the circuit court, the hearing officer entered a final order assessing a fine of $14,500, in order to allow plaintiff to pursue his claim for administrative review.

¶ 12   Before the circuit court, the City filed a transcript of the administrative proceedings created from an audio recording of the proceedings. The City noted that portions of the recording were inaudible, comprising mostly statements made by plaintiff.

¶ 13   Following a December 20, 2024, hearing, the circuit court made an oral pronouncement affirming the decision of the hearing officer stating, "So based on this record, I find that the decision of the hearing officer is not against the manifest weight of the evidence. And for those

reasons, the decision of the hearing officer will be affirmed." The circuit court then asked counsel for the City to submit a proposed order. The circuit court entered its written order on December 23, 2024. That order reads, in its entirety:

"THIS MATTER coming to be heard upon Plaintiff's Complaint for Administrative Review of the Order of the Hearing Officer of the City of Aurora; the Court having reviewed the Record of the proceedings below and having considered the authorities and arguments presented by the parties in their respective briefs, the Court finds, for the reasons stated in open Court, that the Record contains sufficient evidence to support the findings made and the Orders entered by the Hearing Officer in the administrative proceedings from which review has been taken, that those findings and Orders are not against the manifest weight of the evidence and that the application of the law as applied to those facts by the Hearing Officer below was not clearly erroneous. Therefore, the Final Order of the Hearing Officer is affirmed."

¶ 14 On January 17, 2025, plaintiff filed a motion to reconsider the circuit court's order, which was heard on February 4, 2025. At the hearing plaintiff argued, *inter alia*, that the December 23, 2024, written order did not accurately reflect the circuit court's oral pronouncements. After hearing plaintiff's arguments, the circuit court stated, "the order that I signed on the 23rd accurately reflects the decision of the Court." The circuit court then went on to deny plaintiff's motion to reconsider. Plaintiff timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16 To begin, Plaintiff's brief fails to comply with the requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), being largely bereft of citations to the record on appeal and citations to relevant authority in support of plaintiff's arguments. It likewise does not include a

comprehensive statement of facts regarding the underlying case. "Where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal." *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. Despite the shortcomings of plaintiff's brief impeding our review, we will do our best to address the merits of plaintiff's arguments.

¶ 17    The decision of the hearing officer is governed by principles of administrative review. 735 ILCS 5/3-101 *et seq.* (West 2022)). "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Where there is a mixed question of law and fact, we review an agency's decision under the clearly erroneous standard. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An agency decision will be deemed clearly erroneous only where the reviewing court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 18    A mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts constitute a violation of the law at issue. *Id.* at 391. Plaintiff's primary argument before the hearing officer was that he had fixed all of the code violations he was able to safely repair, that the remainder required the use of scaffolding, which was not readily available, and therefore would require time to fix. This argument neither contests the facts at issue nor disputes the applicable law. Moreso, it is an argument in mitigation against the imposition of fines. Accordingly, we review appellee's decision under the clearly erroneous standard.

¶ 19    Turning to plaintiff's arguments, he first argues that the written order submitted to the

circuit court by opposing counsel did not align with the circuit court's oral pronouncements, because it included language that the agency's findings were not clearly erroneous. While the circuit court's oral pronouncement did not include the phrase "clearly erroneous," the order was signed by the circuit court judge, indicating the circuit court's assent to the language. Further, plaintiff raised these same arguments before the circuit court on his motion to reconsider, and the circuit court declined to make any change to the written order stating that the written order accurately reflected its ruling. Accordingly, we have no reason to doubt that the circuit court intended for its judgment to be anything other than that reflected in the written order affirming the administrative decision. See *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993) (where a circuit court's written order is consistent with the intent, sense, and meaning of the circuit court's oral pronouncement, but is merely set forth with greater specificity, the written order will be enforced).

¶ 20     Plaintiff also argues that because the circuit court's order was not entered within three days of the hearing, "the case may be DWP'd[.]" For this proposition plaintiff cites "Rule 306A," however, the language quoted by plaintiff appears to actually come from Texas Rule of Civil Procedure 165a (2024). Plaintiff also cites to what appears to be a circuit court order from a different case in which the circuit court ordered that one of the parties submit an order within three days or that case would be "DWP'd." Neither of plaintiff's purported authorities supports his contention that the failure to enter a written order within three days of the hearing date results in a defective order. Accordingly, we reject this argument.

¶ 21     Plaintiff next contends that the hearing officer was required to record the proceedings before it, and that it failed to do so when significant portions of plaintiff's statements were inaudible in the recordings. Plaintiff contends that these recordings were intentionally manipulated. Further, plaintiff contends that the inaudible portions would have shown that he was unable to

complete the remaining exterior repairs without scaffolding, and that the remaining interior repairs could not be completed until the exterior repairs were completed. A hearing officer has the duty of "preserving and authenticating the record of the hearing and all exhibits and evidence introduced at the hearing[.]" 65 ILCS 5/1-2.1-4 (West 2024). The recordings of the administrative hearings are not in the record, only the transcript. Without the ability to examine the recordings ourselves, we must presume that the defects were not caused by intentional manipulation of the recordings. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the plaintiff."). This places the matter within the realm of a technical error, and "[t]echnical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her." 735 ILCS 5/3-111(b) (West 2022).

¶ 22    Even if we accept plaintiff's claims that inaudible portions of the recording would have shown that all of the remaining violations could not be repaired without scaffolding, and that no workmen with scaffolding were immediately available, his claims still amount to an admission that there remained code violations at the Property. Further, plaintiff does not cite to any authority standing for the proposition that he was entitled to any additional time to cure the violations before the imposition of fines, and our review of the City's ordinances revealed no such provision. See Code of Ordinances, City of Aurora, Illinois, Sec 12-190 (2024) (defenses to building code violations include: that the alleged violation did not exist or was remedied at the time of hearing; that despite reasonable efforts of the owner, the current occupants continue to cause violations; or that the occupants of the Property have refused the owner entry to correct the violation.).

Accordingly, plaintiff cannot show that portions of the recordings being inaudible materially affected his rights and resulted in substantial injustice to him.

¶ 23    As plaintiff does not contend that there were not code violations at the Property, instead conceding there were code violations but arguing that he had been diligent in trying to remedy them, and because the record includes evidence of several violations including numerous inspector's reports and photographs that show visible disrepair to the Property, we agree with the circuit court that the hearing officer's decision was not clearly erroneous.

¶ 24                                III. CONCLUSION

¶ 25    For the reasons stated, we hold that the hearing officer's decision was not clearly erroneous and therefore affirm the judgment of the Kane County circuit court, which affirmed the hearing officer's decision.

¶ 26    Affirmed.